The town of NEW-MILFORD *against* The town of SHERMAN.

Where the question, in an action brought by *A* against *B*, for the support of *P*, an inhabitant of *B*, was, whether *P*, when the support was furnished, was a pauper, within the meaning of the statute; and it appeared, that shortly before the time referred to, *P* was in possession of two promissory notes, the dates and value of which were not found, from which he afterwards received 7 dollars; and the court instructed the jury, that if *P* had property that could be made available for his support, he was not a pauper within the meaning of the law; and that it was for them to find, whether the notes in question were of any value so as to prevent his being in need of support, at the time it was furnished; the jury having returned a verdict for *A*, it was held, 1. that the jury, under the instruction given, must have found, that *P* was in fact a pauper; 2. that

*A* was obliged to furnish him support, while within the limits of that town; 3. that these matters were properly submitted to the jury; 4. that the jury, if the evidence satisfied them, could give the verdict they did.

Where *B*, on the trial of such action, to prove the settlement of *P* in *A*, offered in evidence a certificate of the town-clerk of *A*, that at the election of state officers in 1843, *P* was enrolled as a voter in that town; it was held, that such certificate was inadmissible; 1. because it was not the proper evidence of a matter of record, but there should be a certified copy of the record; 2. because the fact certified, if proved, did not shew the settlement of *P* in *A ;* 3. because it related to a different *time* from the one in controversy.

Where *A*, on the trial of such action, to prove the settlement of *P* in *B*, by commorancy, offered, in connexion with other evidence, the declarations of *P*, made in the act of leaving an individual in *A* for whom he had been labouring, and while travelling towards *B*, that " he was going *home* to *S*," the place of his former residence in *B ;* it was held, that such declarations were admissible, as shewing the mind and conduct of *P* in relation to his domicil.

Where it appeared, in such case, that *P*, an inhabitant of *B*, was in *A*, in want of immediate support; *A* furnished the support, and gave due notice to *B ;* it was held, that *A* had, thus far, a good cause of action against *B*.

Where it further appeared, in such case, that while *P* was residing at the house of *S* in *B*, one of the select-men of *A*, acting under the mistaken belief that the house of *S* was in *A*, directed *P* to be taken thence and placed in the poor-house of *A*, where the supplies in question were furnished, without returning *P*, or offering to return him, to his former residence; it was held, that *A* was not, by such mistake, estopped from shewing the truth, or precluded from a recovery.

In order to gain a settlement in a town, by commorancy, under our statute, a person must have resided therein constantly and continuously, for the full period of six years; but if he had an established residence therein, for that period, his temporary absence therefrom, for a temporary object, either of business or pleasure, if he intended to return, and did in fact return there, as to his home, when that object was accomplished, such absence would not interrupt the continuous residence necessary to gain a settlement.

THIS was an action to recover the expenses of the support and funeral of *William Prout*, alleged to be an inhabitant of the town of *Sherman*.

The cause was tried, on the general issue, at *Litchfield*, *February* term, 1851.

On the trial, it was admitted, that *Prout*, the pauper for whose support the action was brought, had his birth, in the town of *New-Milford ;* but the plaintiffs claimed, that subsequently to *December*, 1832, and before the accruing of their account, he had gained a settlement in the town of *Sherman*, by six years residence therein according to the statute.

It appeared in evidence, that while *Prout* was residing in *Sherman*, at the house of *Jotham Sherman*, on the 23d of *February*, 1847, said *Jotham* notified one of the select-men of *New-Milford*, that he was there, and was poor, and unable to support himself; whereupon such select-man directed the overseer of the poor-house in *New-Milford* to take *Prout* and his chest of clothing to the poor-house; which was immediately done; and the town of *New-Milford* then commenced furnishing the support for which they claimed to recover.

The plaintiffs also claimed, and offered evidence to prove, that they put into the post-office at *New-Milford* letters, dated the 22nd of *March* and 1st of *June*, 1847, directed to the select-men of *Sherman*, informing them, that *Prout* was on expense in *New-Milford*; that he continued to reside at said poor-house and to be supported by the plaintiffs there, to the 3d of *May*, 1847, when he left the poor-house, and was absent therefrom until his return thereto, on the 12th of *May*, 1847, from which time he was supported by the plaintiffs there, until his death, on the 2d of *April*, 1848. It appeared, that during his temporary absence from the poor-house, he visited *Jotham Sherman's* family; but how long he remained there, and at what other places he visited, did not appear.

The plaintiffs also claimed and offered evidence to prove, that at the time the select-men of *New-Milford* directed *Prout* to be taken to the poor-house, it was under the mistaken belief, that *Jotham Sherman's* house was in the town of *New-Milford*; but there was no evidence that the plaintiffs informed the select-men of *Sherman* of the manner in which *Prout* came to the poor-house, or that there had been any offer to return him to the town of *Sherman*. Whereupon the defendants claimed, that upon the facts claimed and admitted by the plaintiffs, they could not recover, and requested the court so to instruct the jury.

They also denied that *Prout* was destitute and required support, and requested the court to charge the jury, that if he was taken from the town of *Sherman*, with his chest of clothing, by the select-men of *New-Milford*, without any notice that he needed assistance; and if the town of *New-Milford* had voluntarily furnished the supplies charged in

*Litchfield,
June, 1851.*

New-Milford
*v.*
Sherman.

their bill of particulars, before returning, or offering to return, him, or his chest of clothing, to the town of *Sherman;* and if they never had so returned, or offered to return him, they could not recover, notwithstanding the jury might believe, that he was first taken from *Sherman* under the mistaken belief aforesaid.

The court did not so charge the jury; but did charge them, that if they found, that *Prout* was a pauper, and needed the relief furnished; and if the select-men of *New-Milford,* in directing him to be brought to the poor-house, acted under the mistaken belief that he was, while at *Jotham Sherman's,* within the limits of the town of *New-Milford;* and if they found, that he was, at the time, a settled inhabitant of the town of *Sherman;* and if they found, that they had given to the select-men of *Sherman* the notice required by law; they were entitled to recover for his support, both before and after his temporary absence from the poor-house, in *May,* 1847.

The defendants claimed, that *Prout* had never gained a settlement in *Sherman,* but had ever belonged to and had resided in the town of *New-Milford.* And for the purpose of proving their claim, they offered, in connexion with their other evidence, the certificate of *Jared Bostwick,* town-clerk of *New-Milford,* that in *April,* 1843, *Prout* was enrolled as a voter in *New-Milford;* to which the plaintiffs objected; and the court sustained the objection, and excluded the certificate.

The plaintiffs however claimed, that if *Prout* had ever gained a settlement in *Sherman,* it was previous to the year 1842; and there was no claim that he had gained a settlement there, at any time after that year; nor was there any claim, on the part of *Sherman,* that he was not a settled inhabitant of that town, at the time of the accruing of the plaintiffs' account, if he had in fact gained a settlement in *Sherman* previous to that time.

It was proved and admitted, that for a period of more than four years previous to *July,* 1838, *Prout* had his residence in the family of *Hannah Sherman,* the wife of *Jotham Sherman,* in the town of *Sherman;* and the plaintiffs claimed, that his residence continued there, for more than a year after *July,* 1838. It appeared, that during some portion of

that year, he laboured for *Cornelius B. Baldwin,* and while so labouring, he slept and had his meals at *Baldwin's* house in *New-Milford.* The plaintiffs claimed, that he worked for *Baldwin,* as a day-labourer only, and that his home continued to be at Mrs. *Sherman's.* To prove which they introduced evidence tending to shew, that he never remained at *Baldwin's* but a few days at a time ; that he always returned to Mrs. *Sherman's* on *Saturdays,* and remained there over the *Sabbath ;* that his clothes, except what he had on, were always kept, repaired and washed at Mrs. *Sherman's ;* and that he went there to change his dress, and to cleanse and shave himself.

*Litchfield,* June, 1851.

New-Milford v. Sherman.

In connexion with evidence shewing, that on various occasions, during this time, *Prout* left the house of *Baldwin* in a direction to go to Mrs. *Sherman's,* and was seen travelling on the road in that direction, the plaintiffs offered in evidence the declaration of *Prout,* while so in the act of leaving *Baldwin's,* and also while so travelling towards Mrs. *Sherman's,* that he "was going home to Mrs. *Sherman's :*" to which declaration of *Prout* the defendants objected ; but the court admitted it.

The defendants also requested the court to charge the jury, that *Prout,* who was a man without any family of his own, in order to gain a settlement, by six years residence in *Sherman,* must have resided there, and eat and slept there, for the full period of six years successively ; and that his absence therefrom, while so at work for *Baldwin,* was such an interruption of his residence there as would prevent his gaining a settlement.

On this point, the court told the jury, that they must find, that *Prout* had resided in *Sherman* constantly and continuously, for the full period of six years, in order to find that he had gained a settlement there ; but that, if he had an established residence at Mrs. *Sherman's* as his home, previous to the year 1849, his temporary absence therefrom, for a few days, as for a week or more, for a temporary object, either of business or pleasure, if he intended to return, and did in fact return there, as to his home, when that object was accomplished, such absence would not interrupt the continuous residence necessary to gain a settlement ; and that it was for the jury to find, from all the facts and circumstan-

ces proved, whether *Prout's* residence did in fact continue in *Sherman*, or was interrupted, by his residence at *Baldwin's*.

It appeared, that just before *Prout* was taken to the poor-house in *New-Milford*, he had two notes, one signed by a married woman, and one by her and her husband; one of these notes was for the sum of about twenty-five dollars, and the other for about the sum of one dollar and fifty cents; which notes he put into the hand of one *Jackson*, a short time before he went to the poor-house. The dates and value of such notes did not appear; nor did it appear which of them was signed by the married woman only, and which by her and her husband; but it did appear, that at some subsequent time, *Jackson* collected about the sum of 7 dollars on the notes, the most of which, at two different times, he paid over to *Prout*. The defendants thereupon requested the court to charge the jury, that *Prout* was not a pauper in need of support, at the time it was furnished.

On this subject, the court told the jury, that if *Prout* had property that could be made available for his support, he was not a pauper, within the meaning of the law; and that it was for them to find, whether the notes in question were of any value, so as to prevent his being in need of support, at the time it was furnished.

The plaintiffs obtained a verdict for the sum of 63 dollars, the amount charged in their bill of particulars; and the defendants moved for a new trial.

*Orton* and *Hubbard*, in support of the motion, remarked *in limine*, that the right of one town to recover of another, for the support of a pauper, is derived from strict law, and has no foundation in natural justice or equity. Especially is it so, in this case. The pauper having been settled by birth in *New-Milford*, the plaintiffs must fail to recover, unless they can bring their case within the letter and spirit of the law. They then contended,

1. That the plaintiffs, by the removal of *Prout* from the town of *Sherman*, and placing him in their poor-house, must be considered as having voluntarily assumed the burden of his support, and cannot recover. *Child* v. *Morley*, 8 *Term R.* 613. The plaintiffs were under no compulsion to assume

this burden ; and therefore, the expense was not necessarily incurred, in the sense of the statute, from which alone the right of action is derived.   *Stat.* 537. § 18.

Indeed, the town of *New-Milford* had no right to assume jurisdiction of the question whether *Prout* was in a condition to require support ; and much less, to remove him beyond the jurisdiction of the town of *Sherman.*   By so doing, they deprived the select-men of that town of the power of exercising that discretion over the question conferred by statute, and also the town of all power to exercise the rights conferred on towns to aid them in discharging the burthen of supporting paupers.

If *Prout* was settled in *Sherman*, and was a pauper, then the select-men of that town were his overseers, and might provide for his wants in their own way.   *Stat* 536. § 14.

*Prout* was also liable to be removed to such place to be supported as the town of *Sherman,* or their select-men, might direct.   *Stat.* 536. § 15.

By his removal to the poor-house in *New-Milford*, a distance of 15 miles, the select-men of *New-Milford* assumed jurisdiction over a matter which had been expressly conferred, by statute, upon the select-men of *Sherman ;* and it would be hateful tyranny to allow the plaintiffs, in that way, to decide that *Prout* was a pauper, and entitled to support from the defendants, in the way and manner that should be prescribed by the plaintiffs.

While *Prout* remained in *Sherman*, the select-men of that town might furnish him with support where he was, or might remove him to their own poor-house, or to any other place in the town without expense ; but after he had been removed to the poor-house in *New-Milford*, the defendants had no power to get him back, except by a warrant, and of course, were compelled, either to submit to the expense of procuring his return through the service of a warrant by an officer, or to pay the demands of the plaintiffs.   *Stat.* 534. § 7.

2. That the town of *New-Milford* are chargeable with the acts of their select-men ; and it cannot be said, that they may repudiate the removal of *Prout* from the custody of his overseers, the select-men of *Sherman*, as a wrongful act, and still recover for the support which was a consequence of that wrongful act,   Their select-men are their agents in providing

for the support of a pauper; and the act of the selectmen, is the act of the town. At any rate, the plaintiffs are estopped to deny that they authorised the removal of *Prout* to their poor-house, so long as by this action they are attempting to appropriate the benefits of it to themselves.

3. That the motion finds, that *Prout* was at *Jotham Sherman's* in the town of *Sherman*, and that the select-men of *New-Milford* were notified, by said *Jotham*, that *Prout* was at his house, and needed support; and that thereupon, the select-men of *New-Milford* ordered him to be transported to their poor-house, which was done, and the support was furnished. No *request* of *Sherman* was ever made, that *New-Milford* should interfere. No *notice* was ever given of the way and manner *Prout* came into the poor-house of *New-Milford;* nor was any *offer* ever made to return him to *Sherman.* But it is found, that the select-men of *New-Milford* acted under a mistaken impression, when they gave the order for *Prout's* removal, that the house of *Jotham Sherman* was in *New-Milford.* Can the plaintiffs recover, in such a case?

4. That the pretended mistake does not alter the case. We have seen that it occasioned a loss to *Sherman,* and actually deprived them of rights conferred on them by statute. Natural justice requires, that the loss should fall on those who committed the blunder.

*Sherman* was guilty of no neglect or imposition, and cannot be made accountable for the blunders of the select-men of *New-Milford.*

Indeed, it cannot be called a mistake. It is not so in law. It is mere *ignorance.* In law, the plaintiffs are presumed to know, and are bound to know, the limits of their *own town.*

If it can be called a mistake, the select-men were guilty of such gross neglect, that the plaintiffs cannot shelter themselves, as under an innocent mistake. Their select-men should have enquired of the school-master where the town line was. *Chitt. Cont.* 625.

Natural justice and legal policy require that the plaintiffs should at least attempt to retrieve the mistake before they sue the defendants.

5. That the case cannot stand on more favourable ground than an action against a father or husband for goods furnish-

ed to his child or wife ; and in such last named case, no recovery could be had, without proof that the father or husband had refused to furnish a necessary support.

There is no pretence that the defendants had ever refused to supply necessaries to *Prout*. It does not appear, that the defendants were ever notified of his condition. The presumption is, that *Sherman* was ready and willing to furnish a proper support for all its paupers. In fact the law presumes, that he was being provided for, and was supplied, with all needful support, inasmuch as he was found residing in the town of *Sherman*. He was living at *Jotham Sherman's*, where he was provided for ; but to relieve *Jotham Sherman* of the burthen, the plaintiffs *volunteer* to take him, being under no legal or moral obligation to do so.

The statute gives an action to recover for support, because, in another section, it compels the support to be furnished. How then can it be said, it was expense *necessarily* incurred, when it is so plain that *New-Milford* was not only under no obligation to interfere in the matter, but was actually infringing upon the rights of *Sherman* in furnishing the support.

6. That the court erred in rejecting the certificate of *Jared Bostwick*, because it conduced to shew, when taken in connexion with the other evidence, that *Prout* was a voter in and inhabitant of *New-Milford*, and that he had never lost his residence there.

7. That the admission of the declarations of *Prout* that " he was going home to *Jotham Sherman's*" was also erroneous. It was a mere casual declaration, and might be true or false ; and in questions of settlement, there is no necessity of relying upon such uncertain evidence, which may lead to such erroneous results. The declaration cannot be said to be a part of the *res gesta*, in such a sense as to make it admissible.

*Sanford* and *Seymour*, contra, contended, 1. That that part of the charge first excepted to, was correct. The charge was, that if *Prout* was a pauper and needed the support furnished ; if the select-men of *New-Milford*, in removing him to the poor-house, acted under the mistaken belief that his place of residence was in *New-Milford ;* and if

he was settled in *Sherman*, and due notice had been given; the plaintiffs were entitled to recover. This was right. In the first place, the removal of *Prout* to the poor-house, was not, on the part of *New-Milford*, a *voluntary* courtesy; which always implies in the actor an *intention* to do something for the benefit of another. Secondly, the mistake of the select-men in the removal, is not *conclusive*. 3 *Stark. Ev.* 1333. Thirdly, the defendants denied their liability, not on the ground of the removal, but on the ground that *Prout* was not settled in *Sherman*. See *Newtown* v. *Danbury*, 3 *Conn. R.* 503.

2. That the town-clerk's certificate was properly rejected. First, if he was an elector residing in *New-Milford*, it did not follow of course, that he was *settled* there. Secondly, it was not the best evidence of the fact that he *voted* in *New-Milford*. The person who made the entry should have been produced. Thirdly, a town-clerk, though authorized to give official *copies* of his records, cannot give *certificates* that such records exist. Fourthly, the certificate in question was altogether immaterial; for the motion finds, that if the settlement in *Sherman* was gained at all, it was prior to 1843, when it is claimed that *Prout* voted in *New-Milford*.

3. That the declarations of *Prout*, while in the act of leaving and on the way, were properly received. They were part of the *res gesta*, explanatory of his motive and intention. The question of one's home or domicil is always proved, by enquiring into the motive or intention with which he went to and staid in the place designated; to prove which his declarations are admissible. 1 *Greenl. Ev.* § 108. *Thorndike* v. *City of Boston*, 1 *Metc.* 242. *Kilburn* v. *Bennett*, 3 *Metc.* 199.

4. That the charge as to commorancy, was right. "Residence," *domicil*, *home*, are synonymous terms. Neither necessarily implies *settlement*; but either, continued uninterruptedly, for six years, confers a settlement. *Stat.* 533. § 6. *Reading* v. *Westport*, 19 *Conn. R.* 561. That *Prout* had no family, made no difference, in point of law, though it might render the proof more difficult; of which the defendants had the benefit before the jury. The court gave to the jury the only true criterion.

5. That the defendants have no reason to complain of the

charge as to *Prout's* pauperism.   The court charged, that if   *Litchfield,*
*Prout* had property which could be made available for his   June, 1851.
support, he was not a pauper.   He might have notes which   New-Milford
were not collectible, because they were given by married   *v.*
women or minors, or were barred by time, or were worthless,   Sherman.
by reason of the insolvency of the makers.   He might have
other property, which, unchanged, could not, from its nature,
administer to his necessities, and which could not be sold or
exchanged.   Such property of any amount, evidently would
not save him from pauperism.   Here, in the first place, the
dates and value of the notes did not appear.   Secondly, it
did not appear when the small sum that was collected, was
paid over to him.   It might not have been in season to re-
lieve him.   Thirdly, it might not have been *sufficient,* in
amount, or within the knowledge of the select-men.

The only material matters of facts on this point, were
submitted to the jury, and have been found by them, against
the claims of the defendants.   The jury have found the *fact,*
that when the supplies were furnished, *Prout* had not prop-
erty sufficient to relieve his necessities, which could be made
available for that purpose.   And whether a person is a pau-
per or not, is a question of fact, not of law.   *Lyme* v. *East-
Haddam,* 14 *Conn. R.* 398.   *Wallingford* v. *Southington,*
16 *Conn. R.* 431. 435, 6.

ELLSWORTH, J.   We have directed our attention, for the
most part, to only one of the grounds urged for a new trial.
Is the town of *New-Milford* prevented from recovering
from the town of *Sherman* for the support furnished to
*Prout,* one of its inhabitants, having *themselves* been instru-
mental in bringing him into the town of *New-Milford?*

But we will first dispose of the other points which are of
minor importance.   And first, it is said, that *Prout* was not
poor and necessitous, within the meaning of the statute ;
because a short time before he was in the poor-house in
*New-Milford,* he put two promissory notes into the hands
of one *Jackson,* (the dates and value of which are not found,)
one of them nominally for 25 dollars, and the other for 1 dol-
lar, 50 cents, on which 7 dollars, in the whole, was after-
wards collected, and paid over to *Prout.*   The judge left it
to the jury to say, whether, notwithstanding these notes,

*Prout* was poor and necessitous—whether he had means or credit for his immediate wants or necessities, saying to them, that if he had, he was not then a pauper, to be supported. The jury have found, under this instruction, that he was in fact a pauper; and this, we think, they could find, if the evidence satisfied them. They likewise must have found, under the charge, that *New-Milford* was obliged to take care of him, to prevent him from suffering while in their town. A similar charge to this was approved of, in the case of *Wallingford* v. *Southington,* 16 *Conn. R.* 431.

It is again said, that the court should have rejected the certificates of *Jared Bostwick,* town-clerk of *New-Milford.* The certificate declares, that the register of votes of that town for *April,* 1843, at the annual election of state officers, shows, that *Prout,* the pauper, *voted* in that town. We think the certificate was correctly rejected, because, first, a certificate is not the proper evidence of a record, but there should have been a certified copy of the record itself. Secondly, the record itself, would not be the proper evidence of the particular fact of settlement or no settlement, nor of residence even; these must be proved, by appropriate evidence, under oath. Thirdly, the record speaks of a fact *after,* and only after, the acquired settlement of *Prout* in *Sherman.* The plaintiff claimed no other settlement than one complete *before April,* 1843; so that the fact stated in the certificate, was wholly irrelevant.

Again, it is said, the court should not have received the declarations of *Prout,* that *while going* towards *Sherman,* he was going to his home there; that is, that he spoke of and treated the house of *Jotham Sherman* as his *home.* We think this testimony is good evidence of the fact of domicil, so far as mind or conduct enters into the fact of one's home or place of permanent abode.

We come then to the main question in the case. Does the conduct of the select-men of *New-Milford* preclude a recovery? The language of the statute is, "and it shall be the duty of every town to maintain and support all the poor inhabitants belonging to the town, whether residing in it, or in any other town in the state." The jury found *Prout* was, during the time of his support by the plaintiffs, an inhabitant of *Sherman,* and in want of immediate support, and that

*New-Milford* had given notice, in due form of law, to *Sherman*, in order that they might remove *Prout* from *New-Milford*, or abide the consequences. It is true, a select-man of *New-Milford* did aid the pauper, in the first instance, to leave the house of *Jotham Sherman* in the town of *Sherman*, in order to go to the poor-house in *New-Milford;* but as soon as the plaintiffs discovered, that the pauper was an inhabitant of *Sherman*, they endeavoured, as far as they could with safety, to get the pauper out of their town, and back to *Sherman.* True, they did not apply force to remove him ; but they did not restrain him, or wish him to remain. In fact, after *first* coming there, he wandered away from the town into *Sherman*, and was gone from *New-Milford* some nine days, and returned, against the wishes and without any coöperation of *New-Milford;* and this was nearly two months after *New-Milford* had notified *Sherman*, that *Prout* was an inhabitant of *Sherman*, and they must remove him and provide for him. It is by no means true, that the plaintiffs detained him against his will, at any time ; nor is there any pretence of it, unless it may be, for a few days, until they gave notice for his removal. The defendants, although notified, would do nothing about *Prout*, but left him, unheeded, though confessedly their inhabitant, to remain in *New-Milford*, and die, and be buried, at the plaintiffs' expense.

Here then, the plaintiffs' claim has all the essential elements of a good cause of action ; and why then shall they not recover upon it ? The mistake of the select-man of *New-Milford*, if the defence prevails, is made to fall on his town, with extraordinary and unexampled severity. Had a stranger carried *Prout* into *New-Milford*, and left him there, it would have been no bar to a recovery against *Sherman.* Nor is this act of a select-man of *New-Milford* any more a bar than in that case, even if the select-man was really in fault ; and much less so, if he laboured under a mere mistake. He intended only to discharge a duty imposed under a severe penalty for neglect—to provide for a suffering pauper within the limits of *New-Milford;* as it was then supposed, and honestly supposed. But strictly, as the house from which he was taken, proved to be in the town of *Sherman*, he had no right, as the representative of *New-Milford*,

*Litchfield,*
*June, 1851.*
_____
New-Milford
*v.*
Sherman.

to do as he did do; and cannot, therefore, bind that town by his act. *New-Milford* would have had a right to repudiate the act, even had there been some fault on the part of the select-men. They did in fact, actually repudiate it, by giving early notice to *Sherman,* that *Prout* was one of *their* inhabitants, and *they* must provide for him. Most certainly, *Prout's* place of *settlement* was not changed, by what was done by that select-man. He still belonged to *Sherman,* as before; how then does *Sherman* avoid the expenses of supporting and maintaining him? We think, the act of the select-man, under the circumstances stated, should be laid quite out of the case: it was a sheer mistake, nor was it of any injury to *Sherman;* for they would have had to support him themselves; since the jury have found he was really a pauper. There was no fraud, and in truth no fault, on the part of *New-Milford.* What should *New-Milford* have done more than she has done, to avoid this burden? Is it so, that she is always obliged to support a pauper, not having a settlement in the town, because one of her select-men, through mistake, rendered aid in getting the pauper into her poor-house? This indeed must follow, unless she can give notice to the town where he belongs, and so relieve herself, thereafter, or unless, as the defendants claim should have been done, *return* the pauper from whence they took him. But this would have been of no real importance to the defendants; and besides, *this transporting of a pauper into another town for support, is a perilous transaction, and highly penal,* if not justified by the facts, as they shall be proved. We think that when there has been no fraud or real fault, on the part of the select-men, in removing and supplying the wants of a needy pauper, the question, where is the place of his settlement, and where to be supported, should not be prejudiced, by any *bona fide* removal, but be left untouched and undecided. As the matter stood, at the time, it was a grave question where *Prout* was in fact settled—where was the *dividing line between the towns.* This could not be certainly known until the verdict of the jury; and even then, it might not be settled truly and finally.

The objections to this view of the case, urged by the counsel for *Sherman,* have more of sophistry than good sense. They say, a remedy for supporting a pauper, is giv-

*Litchfield,*
June, 1851.

New-Milford
*v.*
Sherman.

en only by statute; and that this case comes not within the provisions of the statute. But why is it not within the provisions of the statute? Every important requisite is found which the statute requires. Has a forfeiture of right resulted from a mistake? Is *New-Milford* any way estopped, from setting up the truth? Has *Sherman* thus luckily got rid of her pauper, by a mistake? Why,—nothing of this is true. *New-Milford* is not estopped, nor has she compromised any of her rights. True, indeed, towns may adjust and settle their differences and disputes in relation to paupers, as well as to other matters, whether of law or fact, and they may be held by such acts of settlement : but here there was *no settlement* of differences, real or supposed, and nothing like it at all. Let me ask, if the select-men of *New-Milford,* on notice from *Sherman,* that the pauper was in their town, and they must take him away, or pay for his support, had gone and removed him from *Sherman,* believing the pauper had his settlement in *New-Milford ;* could not the latter town, on learning that the pauper had his place of settlement in *Sherman,* have given notice to *Sherman,* and looked to her for indemnity ? Much more, where the select-men of *New-Milford* did not intend to remove the pauper *from Sherman* into *New-Milford,* but to help one of its own supposed paupers, to get from a private house into the town's poor-house. Is it not common for the select-men of towns, upon receiving notice that one of their poor requires support, in a neighbouring town, to enquire into the facts, and then, as they are advised, go and bring the pauper within their own limits, without embarrassing the question of the place of settlement and support of the pauper, if facts are afterwards discovered, which shew the pauper's settlement is elsewhere ? Suppose the select-men of *Hartford* receive notice from the select-men of *Windsor,* that a female belonging to *Hartford* is there, on expense. The select-men of *Hartford* make enquiry, and find, the woman was born in *Hartford,* and, they go and bring her home ; by and by, it comes out, that she is married and is not settled in *Hartford.* Cannot *Hartford* notify the town where she *is* settled in her husband's right, either *Windsor,* or any other town, and oblige that town to defray the expenses of supporting her ? And is any tendering back of the pauper necessary beyond

what is implied in the notice given? It would be going very far indeed to say, that select-men, without special authority given for that purpose, can, by their own conduct, *estop* their town from contesting the question of a pauper's settlement and support, whenever it fairly arises? But it would be even more so, to hold, that bringing home a pauper, under a mere misapprehension of the boundaries of a town, should have that effect.

It is further objected, that *New-Milford* is a *volunteer* in the expense of supporting the pauper in question. Did her select-men volunteer in *bringing* the pauper? Did they volunteer in keeping him from suffering and starvation? Did they do wrong? Was he not there and needy? At no time did they certainly know it could be proved he had a settlement in *Sherman ;* for this depended upon the question of a town line ; and hence they were not obliged, at their peril, to *return* him, or support him at their own expense. They gave notice to *Sherman*, and thus plainly told *Sherman* they were not volunteers ; and it is puerile to hold, after this, that they were volunteers. *Prout* was in their poor-house by mistake, and that was all ; and it was of no importance to *Sherman* to be informed *why* it was so—and the reason, if stated, would not have bettered their condition at all. Every question in their favour was open, as much so, as if he had wandered there at first, as he did afterwards.

It is again said, that as the pauper was brought into *New-Milford* by their select-man, he was not "*residing*" therein, and hence not within the provisions of the statute. Being in the town, and in necessitous circumstances, is enough in other cases, and is enough in this, unless the mistake in the outset is to neutralize the subsequent continuance, especially after *New-Milford* had given notice to *Sherman.* We think the pauper *was* a resident in *New-Milford ;* and that it may be properly said, that their select-men were obliged to provide for him, upon receiving notice of his suffering condition. If this is not so, then in the cases above supposed, the select-men, who bring into town a pauper, who, they suppose, has his place of settlement in the town, but who, they afterwards find, has his place of settlement in some other town, or perhaps of the town from which they took him, are mere

volunteers in continuing to support him, though they give notice and do all they can to throw him off, except that they do not take the risk of removing the pauper into the town where they suppose he is settled, but leave the question of settlement to a judicial investigation and decision.

*Litchfield*,
June, 1851.

The counsel for *Sherman* put this objection in a very imposing form. They ask, shall the select-men of a town *steal* a pauper, and bring him into their own town, and then sue for supporting him? There is no similarity between the case supposed and the one on trial. There has been no stealing, nor fault whatever; nor any perseverance in a fault. It was a mistake, without fault; and when discovered, immediate measures were taken to obtain relief from the act.

In this opinion the other judges concurred.

New trial not to be granted.