Enfield *v.* Ellington.

TOWN OF ENFIELD *vs.* TOWN OF ELLINGTON.

First Judicial District, Hartford, March Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The certificate of a public officer under his official seal, as to the contents of a record in his custody, is not admissible as a copy of such record, or of the fact therein recited; even if such certificate is duly sworn to and otherwise properly authenticated.

The official registry lists of electors and the original check lists used in the elections, are competent evidence tending to prove the domicil of a person whose name appears thereon, and, if his name is checked on the latter lists, of the fact that he voted on such occasions. The case of *New Milford* v. *Sherman*, 21 Conn., 101, in so far as it is inconsistent with this doctrine, is overruled.

In determining whether ancient documents offered as and purporting to be original official records, are in fact such, their general appearance, the place where they were found and the length of time during which they were known to have been there, are all matters entitled to weight. The omission of the proper attestation may render it less easy to identify such documents, but does not destroy their character as records, when shown to be such by other proof.

The facts upon which the judgment of a trial court is founded cannot be retried in this court on appeal; and therefore the refusal of the trial court to certify, as part of the record, the evidence bearing on claims of fact which the finding states were not proven, and upon which certain questions of law, as alleged in the reasons of appeal, are predicated, is not ground for a new trial. (*Two judges dissenting.*)

[Argued March 3d—decided April 15th, 1896.]

ACTION to recover upon two counts for supplies furnished paupers alleged to belong to the defendant town, brought to the Court of Common Pleas in Hartford County and tried to the court, *Walsh, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors in rulings upon evidence, and also in conclusions of fact, in view of the subordinate facts detailed in the finding, and because certain facts were alleged to have been found against the evidence. *Error in judgment upon the second count, and new trial granted upon that count only.*

The case is sufficiently stated in the opinion.

*Charles H. Briscoe* and *George B. Fowler*, for the appellant (plaintiff).

The court erred in finding that the residence of Bennett and Madison was interrupted, or that their absences from Ellington were such as to amount to a *legal interruption* of the continuity of residence. *Town of Salem* v. *Town of Lyme*, 29 Conn., 81; *Charter Oak Bank* v. *Reed*, 45 id., 395; Jacobs on Domicil, § 72; Wharton on Confl. of Laws, § 21; *City of Hartford* v. *Champion*, 58 Conn., 275. A residence once gained is presumed to continue until a new domicil or residence is acquired. *First Nat'l Bank* v. *Balcom*, 35 Conn., 358, and cases there cited; *Easterly* v. *Goodwin*, 35 id., 286; *Clinton* v. *Westbrook*, 38 id., 12; *City of Hartford* v. *Champion, supra;* Jacobs on Domicil, § 122; *Chicopee* v. *Whateley*, 6 Allen, 508. No evidence was introduced to show a legal residence or settlement in any town, save Ellington. The public records and official registers were admissible as competent evidence of the facts contained, provided such facts were relevant to the issue. 1 Greenleaf's Ev., §§ 483, 484; Stephens' Dig. of Ev., § 34. These records were all originals, and the only authentication necessary, therefore, was proof that they came from the proper repository. 1 Greenleaf's Ev., § 485; *Phelps* v. *Hunt,* 43 Conn., 198. It is firmly established that the exercise of political rights is one of the *criteria* of domicil, and admissible to prove it. Jacobs on Domicil, § 435; 5 Amer. & Eng. Ency. of Law, 871, and cases there cited; *Shelton* v. *Tiffin*, 6 How., 185; *Easterly* v. *Goodwin*, 35 Conn., 285; *Kellogg* v. *City of Oshkosh*, 14 Wis., 678; *Charter Oak Bank* v. *Reed*, 45 Conn., 395; *East Livermore* v. *Farmington*, 74 Me., 174; *Weld* v. *Boston*, 126 Mass., 169; *Harris* v. *Whitcomb et al.*, 4 Gray, 434; *Behrensmeyer* v. *Kiertz*, 135 Ill., 622. As to the authenticity of the lists of 1866 and 1867, the lack of signatures was not conclusive. *People* v. *Pease*, 27 N. Y., 472. Under § 5 of Chap. 100 of the Pub. Acts of 1895, the plaintiff was entitled to have the evidence bearing upon the facts claimed to have been proven, certified up as part of the record.

*Charles Phelps*, for the appellee (defendant).

The documents offered by the plaintiff were not shown to be the official records of Ellington; and even if they were, they would be inadmissible to prove Bennett's residence or settlement in that town. *New Milford* v. *Sherman*, 21 Conn., 112. The principle laid down in the case of *Bethany* v. *Oxford*, 15 Conn., 555, is in complete conformity with this doctrine; for there it is expressly stated that a person may have the right to vote in one town, and at the same time acquire a settlement in another. How then, can the fact that such a person was admitted as an elector in a given town, affect the question of his settlement? *Inhabitants of Ellsworth* v. *Inhabitants of Gouldsboro*, 55 Me., 95; *Tamworth* v. *Freedom*, 17 New Hamp., 279. The paper offered in evidence and purporting to be the discharge papers of Leonard E. Madison from the United States Army, did not appear to be either the original paper or a copy of the same; and was not admissible, even if it had been an original, or a certified copy. The trial court did not err in refusing to certify the evidence requested by the plaintiff in support of its bill of exceptions. *Styles* v. *Tyler*, 64 Conn., 432. Moreover the Act of 1895, although in force when the reasons of appeal were filed, was not operative when the trial court was called upon to make up its finding.

BALDWIN, J. It became important during the trial for the plaintiff to prove the date when Leonard E. Madison, who had been a soldier during the civil war in a Massachusetts regiment, was discharged from the service. For this purpose a certificate was offered in evidence, dated in 1884, from the Adjutant General of Massachusetts, under the seal of his department, that this name was borne upon the muster roll of a certain Massachusetts regiment, and which gave the date of enlistment and discharge, both being in the year 1865. This paper was properly excluded. It was not a copy of a record, but at most only an unsworn statement of certain of the contents of a record, and would have been inadmissible, even had it been properly authenticated.

The finding states that Artemas Bennett resided in Elling-
ton during 1858, 1859, and 1862, and during part of each of
the years 1860, 1861, 1863, 1865, 1866, and 1867, and that
during some of the years intervening between 1860 and
1868 he voted there; but that he never had the continuous
residence in the town for six years, which was necessary to
give him a settlement.  The plaintiff, in order to show that
his residence there was continuous for six years, offered in
evidence the original official registrars' lists of the electors
of the town for 1861, 1862, 1863, and 1864, which were also
used as check lists at the April elections in those years.
Each of these contained Bennett's name, and it was checked
on each to denote that he had voted.  The plaintiff also
offered, for the same purpose, papers which it claimed to be
the official registrars' lists of electors for 1866 and 1867, on
which his name also appeared, and had been checked.
They were found among the papers of the town, but bore
no official attestation or signatures, nor was there any other
proof that they were part of the town files or records.
The documents thus offered were all excluded.

The four original registrars' lists were competent evidence
that Bennett was an elector and voted as such for four con-
secutive years.  They were records of those facts, made by
public officers in the course of their official duty, under a
law which required such lists to be kept on file in the town
clerk's office, and carefully preserved.  Public Acts of 1860,
p. 39, § 8.  *Hyde* v. *Brush*, 34 Conn., 454.  Neither registry
as an elector, nor the exercise as such of the right of suffrage,
is conclusive evidence of domicil; but it tends to prove it,
and may be shown by record entries.  The ruling of the
trial court was doubtless based on the case of *New Milford* v.
*Sherman*, 21 Conn., 101, 112; but the observation there
made with respect to a similar question cannot be supported
on principle.

The finding as to the papers offered as the lists of 1866
and 1867 is not entirely explicit.  If they were found among
the papers of the town, in the town clerk's office, under such
circumstances as to indicate that they were the original lists,

left there on file, they should have been received, although bearing no official signatures or authentication. The omission of the proper attestation renders it less easy to identify the documents, but does not destroy their character as records, when shown to be such by other proof.

The same considerations apply to the ruling of the trial court in excluding a book found among the records of the town, which contained an entry, neither dated nor signed, of the admission of Bennett as an elector of the town on April 5th, 1858. If this book was an original record, it should have been received in evidence; and in determining whether it was such, its general appearance, the place where it was found, and the length of time during which it was known to have been there, were all matters entitled to weight. If the entries looked as if they had been made by public officials, contemporaneously with the facts which they recorded, the book would be supported by the ordinary presumptions attaching to ancient documents, which have been in existence for thirty years.

None of the other exceptions to rulings of the court in respect to the admission of evidence have sufficient foundation to justify their discussion.

There is nothing in the subordinate facts that are found, under either count, that is inconsistent with the ultimate conclusion that there had been no sufficient length of residence in the defendant town, by either of the paupers in question, to confer a settlement.

Final judgment in the Court of Common Pleas was rendered on July 3d, 1895, and a request was filed within two weeks for a special finding, upon which to base an appeal. The plaintiff asked for the incorporation in this finding of certain facts, which it claimed to have been proven, and among others, that Leonard E. Madison was born in Ellington, and not before 1849, that being a condition of things upon which a certain claim of law was predicated. A finding was subsequently made, in which these claims of fact were stated to be not proven, and the plaintiff then filed ex-

ceptions, and asked to have the evidence bearing upon them certified as a part of the record. This was refused.

In the opinion of a majority of the court, it was properly refused, because the facts on which the judgment of a trial court is founded, cannot be retried here on appeal. *Styles* v. *Tyler*, 64 Conn., 432; *Curtis* v. *Bradley*, 65 id., 99, 104. This being so, the failure of the Court of Common Pleas to certify the evidence is not ground for a new trial.

That no error was thus committed is also my own opinion; but only because the Act of 1893, upon which the appellant relied, did not contemplate a review on appeal of conflicting evidence upon any point as to which a result had been reached which was not "clearly against the weight of evidence," (Public Acts of 1893, p. 319, § 9); and that, if it was claimed that such was the case in regard to the fact in question, this should have been distinctly alleged in connection with the exceptions to the finding and the request to certify.

I concurred in the result reached by the court in *Styles* v. *Tyler*, and also in the position that the terms of the Act of 1893 were not such as to require us to determine, upon evidence spread upon the record, questions of pure fact settled by the trial court, and not connected with any questions of law as to the decision of which error was assigned. *Styles* v. *Tyler*, 64 Conn., 432, 466. I believe, however, that the legislature could and did by that statute require us to determine, upon such evidence, whether a fact material to the disposition of a question of law, on which error was assigned, had been found clearly against the weight of evidence.

It has been found that the interests of justice require that a power to set aside verdicts rendered against evidence should exist, not only in our courts of original jurisdiction, but in this court. The modern extension of the practice of trying issues of fact to the court, has greatly multiplied the instances in which it is possible that the trial judge may draw erroneous conclusions of fact from the evidence before him. Where this occurs, and the result is that a judgment is rendered which the law, on the facts actually existing, would not warrant, I do not perceive why the legislature may not

give a remedy by appeal to this tribunal. If the decision of twelve men may sometimes be plainly wrong, I see no reason why the opinion of one man may not be, also. Whether any remedy, offered in this court, is styled an appeal or a motion for a new trial, seems to me quite unimportant. *State* v. *Clerkin*, 58 Conn., 98, 102. The Supreme Court of Errors, as I read the Constitution (Art. V., § 2), is one the powers and jurisdiction of which were left to be defined by the General Assembly, and so subject to legislative enlargement or restriction, from time to time; provided only its character, indicated by its name, as the highest court in the State, and as a court of errors, is fully preserved.

If the General Assembly would have a right to give to this court power to set aside the entire judgment of an inferior court, because it was rendered on a finding of facts by the trial judge which was clearly against the weight of evidence, I think it had power to do less, that is, to enlarge the remedy by appeal for errors in law, by requiring us to review the evidence on which the material facts were found, from which were drawn the legal conclusions resulting in the judgment.

To hold otherwise seems to me to be, first, to read into our Constitution a provision which is not to be found there in terms, confining the powers of this court to the redress of errors in law, and then to give to this gloss a very broad interpretation, which in a corresponding degree narrows the functions of the legislative department of the government,— a department which has been thought to possess a jurisdiction more extensive than that usually accorded to that branch in the other States of the Union. *Starr* v. *Pease*, 8 Conn., 541; *Wheeler's Appeal*, 45 id., 306, 315.

For these reasons, while concurring in the judgment of the court in this case, I dissent from the ground on which is based our disposition of the objection made to the refusal of the Court of Common Pleas to certify the evidence as to the place and time of Madison's birth.

There is no error in respect to the first count; but so much of the judgment as respects the second count is set aside, and a new trial granted as to that count only.

In this opinion ANDREWS, C. J., TORRANCE and HAMERS-
LEY, Js., concurred, except as respects that portion in which
the views of the writer, differing from the majority of the
court, are expressed, as to the ground on which should be
placed the disposition of the reason of appeal based on the
refusal of the Court of Common Pleas to certify the evi-
dence.

FENN, J., concurred in the opinion, and with the views of
JUDGE BALDWIN in so far as they differed from those of the
majority of the court.