BENVENUTO RUSSO *v.* METROPOLITAN LIFE INSURANCE COMPANY.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued December 8, 1938—decided January 5, 1939.

*Philo C. Calhoun* and *Daniel F. Wheeler,* for the appellant (defendant).

*Daniel E. Brennan,* with whom was *Daniel E. Brennan, Jr.,* for the appellee (plaintiff).

BROWN, J. The plaintiff is the beneficiary upon a life insurance policy issued September 1, 1936, to her mother, Vienna Santanelli, who died April 27, 1937, of myocarditis and arteriosclerosis. On August 17, 1936, in her application for this insurance, by its terms made part of the policy and the basis of the defendant's obligation, the insured made this statement among

others: "18. Have you been attended by a physician during the last five years? If yes, give names of complaints, dates, how long sick, and names of physicians. No." The jury's verdict was for the plaintiff. The defendant moved that it be set aside, claiming that the answer to the above question constituted a material representation, which the uncontroverted evidence established to be false, and that the jury could not reasonably have found otherwise. The court denied the motion and the defendant has appealed.

That the representation was material to the risk as a matter of law cannot be questioned, and if false it prevented a recovery on the policy. *State Bank & Trust Co.* v. *Connecticut General Life Ins. Co.*, 109 Conn. 67, 70, 145 Atl. 565. Three different portions of the evidence are to the effect that the insured was attended by a physician during the five years next preceding the application. The first is the physician's statement, a part of the proofs of death, plaintiff's Exhibit B. This states that the subscriber, Dr. Kisiel, had treated the insured before her last illness for common colds since 1935; that the immediate cause of death was arteriosclerosis and chronic myocarditis; that he was consulted in April, 1934, by the welfare department as to the condition which either directly or indirectly caused death; and that April, 1934, was the "date of [his] first visit in [her] last illness." The second is the certificate of death, defendant's Exhibit 2, stating that Dr. Kisiel "attended deceased from March —, 1935, to April 24, 1937," and giving the causes of death as above. The third is Dr. Kisiel's testimony as defendant's witness that on twelve dates specified during the period February to December, 1935, he treated her upon complaints of weakness, dizziness, and shortness of breath, for a disease he diagnosed as general hardening of the arteries and chronic

myocarditis. While the evidence that the doctor had attended the insured during 1934, 1935 and 1936 for the malady of which she died, stood uncontradicted, the court denied the defendant's motion, because "the verdict indicates that the jury did not accept Dr. Kisiel's testimony as to his having attended the insured," and it being their function to pass on his credibility, their conclusion should not be disturbed. That the defendant was paying Dr. Kisiel $100 per day for appearing as a witness, elicited on cross-examination, is the only fact disclosed by the printed record tending to discredit his testimony. As further cross-examination made clear, his recital of the specific dates when he attended the insured, together with her complaints, blood pressure, and his diagnosis then noted, was predicated on his office memoranda which the plaintiff made no attempt to impugn. Assuming, however, that the jury having sized him up, as was their right, were warranted in rejecting his oral testimony given in court, this was not true of the evidence contained in Exhibit B and Exhibit 2.

These statements, made in the regular discharge of the doctor's duty as attending physician, which, so far as appears, were made prior to any employment by the defendant or arrangement to testify for it, stand uncontradicted and unexplained upon the record. They constitute not only unimpeached, but independent evidence of the vital fact that the insured, contrary to the express representation in her application, had been attended by this doctor within the five year period, for the serious malady which later caused her death. The official Massachusetts printed form of the certificate of death, Exhibit 2, calling as it does for certification by the doctor of the period of his attendance upon the deceased, having been received without limitation or objection, sufficiently indicates that this was informa-

tion required by law. It therefore constituted evidence of the truth of the fact stated. *Hennessy* v. *Metropolitan Life Ins. Co.*, 74 Conn. 699, 706, 52 Atl. 490; *Branford Trust Co.* v. *Prudential Ins. Co.*, 102 Conn. 481, 487, 129 Atl. 379; *Gett* v. *Isaacson*, 98 Conn. 539, 543, 120 Atl. 156.

The physician's statement in Exhibit B also afforded independent evidence to the same effect. The policy in this case contained no provision as to the manner in which proof should be made of the death of the insured. The plaintiff filed proofs of death upon blanks evidently furnished by the insurer, one of which was the statement of the attending physician. The blank had at the top this provision: "The following statement of the physician is submitted by me as part of said proofs" under the policy in question, and then followed the plaintiff's signature. Where the beneficiary in an insurance policy files as a part of the proofs of death such a certificate as this, under the circumstances of this case it amounts to an approval by him of the statements in it as correct and should be received in evidence against him as an admission by adoption. 2 Wigmore, Evidence (2d Ed.), § 1073, p. 570. As an admission it affords evidence against him which, in view of its nature and purpose, in the absence of contradictory evidence, explanation or qualification, is entitled to great weight. In notes 17 A.L.R. 366, 42 A.L.R. 1455, 93 A.L.R. 1342, and 96 A.L.R. 335, many cases are gathered which deal with the admissibility and effect of such statements and these disclose a considerable variation in the conclusions reached. Professor Wigmore in a note to the section from which we have quoted, says (p. 571): "The question ought to be, in each case, whether the beneficiary has in fact adopted the statements as his own; there can be no general rule for all cases." In this case the plaintiff

was under no contractual obligation to file with the defendant a physician's certificate as to the cause of death and the use of blanks furnished by the company so far as appears was a voluntary act on her part. Under these circumstances the statements in the physician's certificate constitute evidence against her which, in no way contradicted or explained, must be accorded all the weight of a considered admission made out of court. *Perrelli* v. *Savas,* 115 Conn. 42, 44, 160 Atl. 311.

Since it is undisputed that the insured accepted the policy, expressly based on the application which she subscribed, the evidence of her inability to read or write English renders the statements in the application no less binding upon her. Having accepted and retained the policy she was bound by its provisions. *Ryan* v. *World Life Ins. Co.,* 41 Conn. 168, 172; *New York Life Ins. Co.* v. *Fletcher,* 117 U. S. 519, 529, 6 Sup. Ct. 837; *Stanulevich* v. *St. Lawrence Life Asso.,* 228 N. Y. 586, 587, 127 N. E. 315; *Rinker* v. *Aetna Life Ins. Co.,* 214 Pa. St. 608, 613, 64 Atl. 82; *Rauza* v. *New York Life Ins. Co.,* 74 N. H. 334, 338, 68 Atl. 33; Note, 81 A.L.R. 833, 866. It is our conclusion on the record before us that, excluding entirely from consideration the evidence given by Dr. Kisiel in court, the jury could reasonably have reached no other conclusion upon this issue than that the insured's statement in her application that she had not been attended by a physician within five years, was false. This being so, the court erred in denying the defendant's motion to set aside the verdict.

Under the second defense of the defendant's answer, it was a material issue at the trial whether the insured's statement in her application that she was born August 15, 1872, was false. The defendant claimed that she was in fact born ten years earlier, and sought to prove this by introducing in evidence Exhibit 3 for identifica-

tion, which was excluded by the court. This reads: "Province of Avellino, Community of Quindici. Birth Certificate. The Official of the Civil State hereby certifies that Santaniello Vienna, child of the late Saverio and the late Santaniello Caterina was born on the tenth day of the month of August of the year one thousand eight hundred sixty two . . .," and purports to be signed "Frezzaroli" as the "Official of the Civil State." It is not disputed that by the several seals and other signatures of officials thereon, including that of the United States consul at Rome, the document is properly authenticated.

It is clear that this instrument was not admissible as a certified copy of the record of the birth of the insured. Its very wording shows that it does not purport to be a copy. The "authority to certify a copy implies that the terms set forth by the officer as representing the original in his custody must be a literal copy, not merely the substance or the effect, of the original's terms"; and it is settled, therefore, in the absence of statute, that no custodian has authority to certify any less than the entire and literal terms of the original. 3 Wigmore, Evidence (2d Ed.) § 1678. This court has accordingly held that "a certificate is not the proper evidence of a record, but there should have been a certified copy of the record itself." *New Milford* v. *Sherman,* 21 Conn. 101, 112; *Enfield* v. *Ellington,* 67 Conn. 459, 461, 34 Atl. 818. The great number of cases of many jurisdictions so holding, are collected in the foot note to § 1678 above cited, at page 557. "The general governing rule is that the official certification of a fact drawn or gathered from a public record is a mere legal conclusion, or the opinion of the certifying officer, and so inadmissible in evidence. He should copy the record verbatim, certifying that he has done so, and that the copy is an accurate transcript of the

original." *U. S. Slicing Machine Co.* v. *Wolf, Sayer & Heller, Inc.*, 243 Fed. 412, 413; *Guettler* v. *Alfsen*, 289 Fed. 613, 614. "It has always been an accepted principle, for accessible public records, that the proof must be by written verbatim copy of the whole." 4 Wigmore, Op. Cit., § 2108.

Nor was the instrument admissible as a certificate made by the Italian official who issued it, as the defendant argues, citing two cases only in support of its contention: *Griswold* v. *Pitcairn*, 2 Conn. 85, 89, and *Barber* v. *International Co.*, 73 Conn. 587, 602, 48 Atl. 758. Neither is authority for the claim made, since in each a complete copy of the document was offered in evidence, and the sole question raised was as to the sufficiency of authentication. A certificate by a public official is only admissible as evidence of the truth of the fact certified, where an express authority, judicial or statutory, for the making of the certificate is shown. 3 Wigmore, Op. Cit., § 1674. As a further prerequisite to admissibility, it must also appear that the record made by the official was of a fact which it was his duty to ascertain and record. *Murray* v. *Supreme Lodge, N.E.O.P.*, 74 Conn. 715, 718, 52 Atl. 722; *State* v. *Dooris*, 40 Conn. 145, 147. None of these was shown in this case.

The further claim of the defendant is that the existing treaty between the United States and Italy, of February 8, 1868 (15 U. S. Stats. at Large, 609, Article X), providing that: "Copies of such papers [specified contracts deposited with a consulate, etc.], and official documents of every kind, whether in the original, copy, or translation, duly authenticated and legalized by the consuls-general, . . . and sealed with their official seal, shall be received as legal documents in courts of justice throughout the United States and Italy," renders the certificate admissible as legal evidence of the date of

birth of the insured. No authority is cited in support of this contention, and it is unwarranted under a reasonable construction of the clause quoted. The extent of its effect is to permit the substitution of the authentication specified for the formal proof of genuineness which would otherwise be required. It is no more effective to make recitals of fact therein evidence of the existence of such facts, than it would be to render a fact relevant which in truth is irrelevant. The court did not err in excluding the certificate. *Santomassimo v. New York, S. & W. R. Co.*, 92 N. J. L. 10, 13, 105 Atl. 14. The document itself being inadmissible because of its nature, the defendant's questions of the witness Delia were immaterial and properly excluded.

There is error, and a new trial is ordered.

In this opinion the other judges concurred.