OTIS S. KELSEY *vs.* THE UNIVERSAL LIFE INSURANCE COMPANY.

A plaintiff in a suit on a policy of insurance on the life of his wife, being charged by the defense with having obtained the insurance fraudulently, testified as a witness, and was asked on cross-examination, for the purpose of testing the accuracy of his memory, if he could tell the date of his subsequent marriage. The court allowed the enquiry for this purpose. Held, on motion for a new trial, that in respect to such an enquiry, depending for its propriety upon the circumstances of the case and not upon its relevancy, the judge might exercise his discretion.

And held that, so far as the answer to the question might tend to prejudice his case with the jury, it was an objection for the witness to make and not for his counsel.

In the application for the insurance the wife had made certain written statements with regard to her good health. Held that letters written and declarations made by her to third persons shortly before the application, in which she stated herself to be in bad health, were admissible in evidence against the plaintiff.

The policy contained the following provision, under the head of conditions and agreements :—" That the statements in the application for this policy, and on the faith of which it is issued, are in all respects true, and without the suppression of any fact relating to the health or circumstances of the insured affecting the interests of this company." Held that the statements of the application were to be regarded as warranties.

Held however that, whether regarded as warranties or only as representations, as they were material and untrue, they would equally avoid the policy.

ASSUMPSIT on a policy of insurance on the life of Lucy Kelsey, the wife of the plaintiff, for his benefit, brought to the Superior Court in Hartford county, and tried to the jury on the general issue, with notice of fraud in procuring the policy, before *Sanford, J.*

The policy was for $5,000, and was dated November 23d, 1865. The material parts of the application, which was signed by the wife, and was dated November 22d, 1865, were as follows :—

" Question 11. Have you ever had any of the following diseases ? If so, state particulars of their character and duration. Bronchitis, Consumption, Inflammation of the Lungs, Habitual Cough, Spitting of Blood,      *     *     *

" Ans. Nothing, except a slight bronchial difficulty in the winter.

" Qu. 12. Have you had any serious illness, local disease, or personal injury ; if so, of what nature, and how long since ?

" Ans. Nothing, except as above.

" Qu. 13. Have you now, to the best of your knowledge or belief, any disorder, or any infirmity or weakness tending to impair your constitution ?

" Ans. No.

" Qu. 18. State the name and residence of your usual medical attendant.

" Ans. G. B. Hawley, when any.

" Qu. 21. Has any material fact bearing upon your physical condition and family history been omitted in the foregoing questions ?

" Ans. No.

" *It is hereby declared,* that the above are fair and true answers to the foregoing questions, and it is acknowledged and agreed by the undersigned that this application shall form a part of the contract for insurance, and that any untrue or fraudulent answers, any suppression of facts, or neglect to pay the premium on or before the day it becomes due, shall and will render the policy null and void, and forfeit all payments made thereon."

The following provision with regard to the statements of the application was in the body of the policy :—"This policy is issued, and accepted by the insured, and the holder thereof, on the following express

### CONDITIONS AND AGREEMENTS.

*First.* That the statements and declaration made in the application for this policy, and on the faith of which it is issued, are in all respects true, and without the suppression of any fact relating to the health or circumstances of the insured affecting the interests of this company."

On the trial the plaintiff offered himself as a witness, and testified that at the time the application was made he heard

the same read, and that the statements therein contained were true ; that the death of Lucy Kelsey, his wife, took place on the 24th day of May, 1866 ; that the policy was procured by him through one Holt, who represented himself to the plaintiff as being an agent of the defendants, and that the body of the application was in his hand writing; and that Holt proposed to take the application to New York, and that he, the plaintiff, offered to pay his fare both ways.

It was also proved, and not denied, that the defendants took risks and issued policies on invalid lives, as well as upon lives of persons in health, and it was not disputed that the application disclosed an invalid or impaired life, and that the rate of premium paid was larger than the rate charged by the defendants on the life of a person in full health; but the defendants offered evidence to prove, and claimed that they had proved, that the said Lucy Kelsey was not a person in her then condition of health for whom, had they known what her actual condition of health was, they would have fixed any rate of premium intending to insure.

Upon the cross-examination of the plaintiff the counsel for the defendants enquired of him if he knew one Thomas Paine, and if he remembered when Paine erected a certain smoke-house. These questions were introductory to evidence afterwards offered by the defendants to prove that at the time of the erection of the smoke-house, and before the application was made, the plaintiff informed Paine that the smoke therefrom affected the lungs of his wife, and that she had consumption. In answer to the last question the plaintiff replied that he thought he complained of the smoke-house in the fall of 1864 or 1865. The counsel for the defendants then enquired of the plaintiff if his memory of dates was reliable, to which he replied, "I don't trust my memory about dates, but do about other things." The counsel for the defendants then enquired of him if he remembered the date of his first marriage, to which he answered, "The third day of September, in the year I was twenty-one years old." They then enquired, "How nearly can you tell the date of your second marriage ?"

To this last question the counsel for the plaintiff objected, on the ground that the same was irrelevant, and that the answer might be such as to prejudice the plaintiff in the estimation of the jury, and might be adverted to for that purpose by the defendants' counsel in their arguments to the jury. But the court, ruling that it was competent thus to test the memory of the witness, permitted the question to be asked; and the witness gave as an answer, "A year ago last Thanksgiving." To this ruling the plaintiff excepted.

The defendants also proved, and it was not denied, that on or about the 20th of December next following the issuing of the policy, by letter addressed to the plaintiff, the defendants, so far as was in their power, revoked or rescinded the policy, and tendered to the plaintiff the amount of premium paid by him at the time the policy was issued.

Among the grounds of defence set up by the defendants, they claimed that the statements contained in the application relating to the health of said Lucy Kelsey were untrue, and known by the plaintiff to be untrue, and that the policy was obtained by false and fraudulent representations as to her physical condition, and by the suppression by them both of facts affecting the interests of the insurers. And as tending to prove these grounds of defence, they offered the testimony of one Mrs. Ewen, a neighbor of the applicant for five or six years before the 14th of November, 1865. And among other questions the counsel for the defendants asked her if she had had conversations with Mrs. Kelsey in the last year of her life, and prior to Nov. 14th, 1865, in regard to her physical condition. To this question, and to the declarations of Mrs. Kelsey to the witness as to her health, the plaintiff objected, on the ground that the same was hearsay testimony, and upon the ground that the plaintiff's interests could not be affected by the admissions and declarations of a person not a party to the record, and who was not his agent. But the court did not sustain the objection, but ruled that the testimony was admissible, upon the ground that, the physical condition of the health of the assured being a material point in the case, such

declarations might furnish the means of ascertaining what she suffered, and what her symptoms were, and might tend to show the falsity of the statements contained in the application.

The defendants also offered the testimony of other witnesses, that at different times, prior to the issuing of the policy, Mrs. Kelsey had made statements to them at variance with and contradictory to the statements contained in the application. To the admission of this evidence the plaintiff objected, but the court overruled the objection and admitted the evidence.

The defendants also offered in evidence two letters written by Mrs. Kelsey, one bearing date Nov. 19, 1865, with a postscript of Nov. 22, 1865, and the other July 26, 1865, to which the plaintiff objected; but the court admitted the same.

The material part of the former of these letters was as follows :—

"HARTFORD, November 19th, 1865.

"DEAR MOTHER.

I have been thinking of writing ever since I came from Dr. Calkins, but have been very busy getting the children ready for winter, and not being able to do much myself. I cannot run the sewing machine on account of neuralgia in my hip. *   *   *   * I am not able to do but very little, but have to have a good deal of waiting upon and never expect to do very much more, if I should live very long, and that is uncertain. The Doctor thinks my lungs are healing, but the winter is unfavorable for me ; he thinks if I live until spring I will get well. I was dangerously sick with congestion while with the Doctor, so much so the Doctor came near telegraphing to Otis, and would but knew he was coming the next day. I had one severe attack before. It is nothing for me to leave this world, but hard to leave my children to a cold world ; but I will trust in the Lord always, he doeth all things well. I will sadden no one with my troubles, for I never shed a tear before any one and never show anxiety about anything ; soon

enongh when the time comes ; sorrow comes to all sooner or later.    *    *    *    *    *    *    *

LUCY.

"FRIDAY,—I think I am gaining fast."

In the letter of July 26, 1865, she writes to her sister, "My health is no worse than when I was at your house. I am not losing flesh as fast, only a quarter of a pound a week."

The defendants offered evidence to prove, and claimed that they had proved, that Mrs. Kelsey died of consumption, and that she had consumption at the time of making the application, and for a long time prior thereto, and that the plaintiff knew the fact before and at the time the policy was issued. They also offered evidence to prove, and claimed that they had proved, that the name of the usual medical attendant was falsely stated in the application, and therefore claimed that the policy was void by reason of fraud, misrepresentations and concealment, and asked the court, among other things, to charge the jury that the application constituted a warranty, which must be strictly true, and that any misstatement therein, whether intentional or not, would avoid the policy.

The court charged the jury as follows :

"The defences to this suit are—*first*, fraud ; *second*, assuming that the declarations of Mrs. Kelsey, referred to in the policy, are a warranty, a breach of his, the plaintiff's, warranty ; *third*, misrepresentation and concealment, which last are perhaps more properly included in the first, to wit, fraud. So far as this is concerned, it matters not what the contract may have been, for fraud will always avoid a contract. Whenever the party who has obtained a contract by fraud brings an action to enforce it, it is competent for the other party to show the fraud and avoid the action.

"A warranty in insurance is a stipulation on the face of the policy, on the literal truth or fulfillment of which the validity of the entire contract depends. Although, as a general rule, it is true that a paper not attached to a policy does not form part of it, yet it may be that a paper not so attached will be made a part of it, and amount to a warranty, by the express

terms of it; that is, the policy may so speak of another writing as to make it a part of it, though not actually embodied in it.

"If the application of Mrs. Kelsey, and her answers to the questions therein proposed, are part of the policy, or are so referred to as to be recognized and become part of it, they become warranties; that is to say, the plaintiff, by accepting the policy warrants that the statements which are the condition and consideration of the policy are true. So far as the contract is concerned they become conditions precedent, so to speak, which he must show have been complied with before he can recover on the contract. And the court instructs you that the conditions and agreements mentioned in the present policy, having reference to the application, which was a part of the consideration on which the policy was issued, are warranties of facts which must be proved true in all particulars.

"There are but two questions in the case which need occupy your attention. *First.* Have the defendants established the fraud? *Second.* Has the plaintiff proved the truth of the matters he undertook to warrant? For if the fraud is found, or a breach of warranty, there can be no recovery."

The jury rendered a verdict for the defendants, and the plaintiff moved for a new trial for error in the rulings and charge of the court.

*T. C. Perkins,* with whom was *Sill,* in support of the motion.

1. The inquiry as to a second marriage should have been excluded. Had the question been put directly, "Have you been married a second time?" it would have been excluded as irrelevant. But it was not merely irrelevant; its tendency was to prejudice the jury against the plaintiff. The counsel for the defendants would doubtless so suggest to them. *Smith* v. *Chapin,* 31 Conn., 533. The same result would follow if the fact was introduced indirectly. In this way the character of a witness may always be disparaged by inquiry as to his recollection of instances of his misconduct. The excuse of

doing it to test his recollection can always be made. But counsel cannot go out of the case to do this. They might as well examine him in ancient history, to test his recollection of dates.

2. The admissions of the wife, both oral and written, should have been excluded. They were mere declarations of Mrs. Kelsey. They were no part of any *res gestœ;* were not connected with any observation of symptoms by the party to whom the remarks were addressed ; nor with any examination of her physical condition ; nor made to any medical attendant. The contract was with the husband. The fact that she was his wife did not make her declarations admissible. *Benjamin* v. *Benjamin*, 15 Conn., 347. Nor the fact that her life was insured. Her declarations were no more admissible for this reason than those of a debtor would be whose life a creditor had insured ; he could not admit away the rights of his creditor. Nor are her declarations made admissible because the office, before issuing a policy to the husband, required her to sign this statement. If untrue it is to be disproved in the usual way. The office do, or may, also require a certificate of a friend or physician as to certain facts. These persons cannot afterwards confess away the rights of the assured. She was not even the agent of her husband in this matter, in any sense. Even had she been, her declarations would not be admissible against him. 1 Greenl. Ev., § 113 ; Story on Agency, §§ 134, 135, 136, 137. Before entering into a contract with the plaintiff, the office required a certain statement to be signed by a third person. It is now claimed that, by reason of this, such third person may confess away his rights. This cannot be done. *Rawls* v. *American Mut. Life Ins. Co.*, 27 N. York, 282, 290 ; *Fraternal Mut. Life Ins. Co.* v. *Applegate*, 7 Ohio S. R., 292 ; *Stobart* v. *Dryden*, 1 Mees. & Wels., 615.

3. The proposition is untrue, that the whole of this application is a warranty, and that the policy is utterly void unless the statements in every particular are literally correct. Especially when the application is filled up by the agent of the Company. *Woodbury Savings Bank* v. *Charter Oak Insur-*

*ance Co.*, 31 Conn., 526.   Here it is not in terms declared to be a warranty, either in the policy or application.   The office well know the distinction between a *warranty* and a *representation*, and place their claim to rescind the policy on the latter ground only.   For the general history of the origin and progress of the doctrine of warranty, see *Glendale Manufacturing Co.* v. *Protection Insurance Co.*, 21 Conn., 32.   Another special fact in this case is, that this is an office formed to take *invalid lives*, at higher premiums, and this risk was taken as such.   Originally, the assumption was that the vessel insured was sound and sea-worthy ; that was an implied warranty. Here we start with the assumption that the life is unsound. The rule originally would doubtless have been different, if the parties had started upon the assumption that the ship was rotten or unsound.   The character of the statements in the application is such that a preliminary proof of their literal truth is substantially impossible.   The whole course of decisions is not to extend the doctrine of warranty.   *Sayles* v. *North Western Insurance Co.*, 2 Curtiss C. C. R., 610, 616 ; *Glendale Manufacturing Co.* v. *Protection Ins. Co.*, 21 Conn., 32 ; *Jefferson Ins. Co.* v. *Cotheal*, 7 Wend., 80. . To create a warranty, language to that effect must be unambiguous ; if not, the construction is against the insurers.   *Merrick* v. *Germania Fire Ins. Co.*, 54 Penn. S. R., 284 ; *Nichols* v. *Fayette Mut. Fire Ins. Co.*, 1 Allen, 63 ; *Hall* v. *People's Mut. Fire Ins. Co.*, 6 Gray, 185, 191 ; *Daniels* v. *Hudson River Fire Ins. Co.*, 12 Cush., 416 ; *Chaffee* v. *Cattaraugus County Mut. Ins. Co.*, 18 N. York, 376.

*Chamberlin* and *Robinson*, contra.

HINMAN, C. J.   The plaintiff complains of the ruling of the Superior Court in respect to the admission of evidence, and also of the charge of the court to the jury.   He claimed to recover on a policy of insurance on the life of his first wife, and being himself an important witness in his own favor, he was on cross-examination asked how nearly he could tell the

date of his second marriage.   To this question his counsel objected, on the ground of its irrelevancy, and because the answer might prejudice the plaintiff and his case in the esti-mation of the jury.   But the court permitted the question to be put, in order to test the accuracy of the witness's memory. It appears to us that this ruling was so far a matter of dis-cretion with the court that a new trial ought not to be granted on account of it.   It is said that the enquiry related to a mat-ter wholly irrelevant to the issue.   In one sense it undoubted-ly is so, since his second  marriage, and the time of it, could have no influence upon his right to recover upon the policy on the life of his first wife.   But the credit that is to be given to the testimony of a witness is always material, and may de-pend very much upon the accuracy of his memory, as well as upon his disinterestedness and honesty.   And in the case of a witness standing as this one did—the sole party plaintiff in the suit—who was charged by the defendants with having procured a large insurance upon the life of his wife, at a time when he knew, or might easily have known, that she had a fatal disease fastened upon her, the court ought to allow such enquiries as would test him most fully.   As remarked by Savage, C. J., in *Lawrence* v. *Barker*, 5 Wend., 305, " there may be cases where great latitude of examination may be per-mitted, arising from the disposition, temper and conduct of the witness, which can be regulated only by the discretion of the court, and for which it is difficult to lay down a precise rule."   And this court, in *Steene* v. *Aylesworth,* 18 Conn. R., 244, lays down the proposition, that on the cross-examination of a witness much must be left to the discretion of the judge. In this case the witness had been asked if he remembered the date of his first marriage, and he fixed the year by reference to his own age at the time ; and immediately the question as to the time of his second marriage was put, and on objection allowed, to still further test the accuracy of his memory.   We think under the circumstances the court must be held to have exercised its discretion properly in allowing the question to be put.

But it was objected that the answer of the witness might tend to prejudice the plaintiff's case in the estimation of the jury. If this was so, it was for the witness to object to giving an answer, and not for his counsel engaged in the trial ; and it does not appear from the motion that the witness himself had any objection to answering the question. In the case of *Thomas* v. *Newton*, reported in Mood. & Malk., 48, note, Lord Tenterden said that an objection of this sort belonged to the witness, and he would not permit counsel even to argue it. See also *Commonwealth* v. *Shaw*, 4 Cush., 594. Besides, the answer which the witness gave to the question shows that the plaintiff's case could not have been prejudiced by it. His second marriage was not far from six months after the death of his first wife. The fact that he had procured a policy for a large amount on the life of his first wife, so near the time of her death, and then in so short a time afterwards, and while this suit was pending upon that policy, married again, might tend to show that he had no very delicate feelings in respect to her memory ; but this probably is not unfrequently the case in respect to the parties to suits ; and we are not aware that it tends to prejudice their causes in the estimation of juries. We do not think a new trial ought to be granted on this ground.

Again it is claimed that the court erred in admitting in evidence certain declarations and letters of Mrs. Kelsey, made and written about the time the policy was issued. In her application for the policy she had represented herself in her usual state of health, as having never had any disease except a slight bronchial difficulty in the winter, nor any serious illness or local disease, nor any disease tending to impair her constitution ; and that when she had any medical attendant it was Dr. Hawley. And the declarations and letters received in evidence tended strongly to contradict these statements. The claim of the defendants was that the statements in the application were untrue, and known to be so by the plaintiff ; and that the policy was therefore obtained by fraudulent representations in respect to Mrs. Kelsey's health ; and these

declarations and letters, contradictory to her statements in the application for insurance, were received for the purpose of proving the fraud. The ruling on this point is fully sustained by the case of *Aveson* v. *Lord Kinnaird*, 6 East, 188. That was also an action on a life policy on the plaintiff's wife, and, as in this case, the wife had made representations in her application for the policy in regard to her health which were allowed to be disproved or contradicted by her subsequent declarations to a witness. The difference between the two cases in this respect seems to be, that in the case in East the declarations proved were made shortly after she had made her statement to a medical man in order to procure a health certificate, while in the case under consideration the declarations and letters were made and written just before or not long before her statement in the application for insurance. But this surely is unimportant, since it is equally competent to prove the condition of the life insured before and after the time of the insurance, with a view to show what its condition was at that time. And all that is required is, that the declarations and acts proved should not be so remote from the time as to shed no light on the health of the party at the time. One important ground upon which such declarations are received is, that they are part of the *res gestæ.* The subject of enquiry is the health of the person whose life is insured at the time the insurance is effected, and no one can have so perfect knowledge of that as the person himself. Medical men always arrive at their conclusions in respect to health by information in part derived from what their patients say, and what is said by them under circumstances which preclude any suspicion of collusion is as fairly a part of the *res gestæ* in respect to health as symptoms learned from other sources.

But the court charged the jury "that the conditions and agreements mentioned in the policy, having reference to the application, which was a part of the condition upon which the policy issued, are warranties of facts, which must be proved true in all particulars," and the plaintiff insists that this charge is incorrect in point of law. In the body of the policy,

under the heading of "conditions and agreements," is this first condition as to the application: "First, that the statements and declarations made in the application for this policy, and on the faith of which it is issued, are in all respects true, and without the suppression of any fact relating to the health or circumstances of the insured, affecting the interests of this company." The reference here to the application is as clear and precise as in the case of *Jennings* v. *Chenango County Mutual Ins. Co.*, 2 Denio., 75 ; and the facts stated in the application in that case were held to be warranties. It is true that in that policy the reference to the application alluded to it as forming a part of the policy, while in the case under consideration the words are, that the policy is made on the faith of the application, and that the statements in it are in all respects true. But we think this stipulation makes the truth of the material facts in the application as much a matter of contract obligation on the part of the insured, and conditions upon which the policy issued, and on the truth of which it was only to bind the company, as if the same had been embodied in the policy itself. And this has been the uniform doctrine of this court. As remarked by Judge Dutton, in *Woodbury Savings Bank* v. *The Charter Oak Insurance Company*, 31 Conn., 525, it has maintained the integrity of contracts, and the necessity of a strict compliance with all conditions affecting their validity. And he refers to several of our insurance cases, in which statements contained in applications for insurance have been held, with great uniformity, to be warranties. Judge Sherman, in the case of *Wood* v. *The Hartford Fire Insurance Co.*, 13 Conn., 544, perhaps states the law as strongly as it is anywhere laid down, and it may be said goes to the verge in his statement of it. Yet the doctrine as he states it, though somewhat questioned by Judge Ellsworth, in the *Glendale Manufacturing Company* v. *Protection Insurance Company*, 21 Conn., 32, as applicable in all cases to fire policies, has never been overruled.

While, however, we are satisfied that the charge of the court

was correct in this case, it is proper to remark that in our opinion it is not very important whether the statements in this application be regarded in the light of technical warranties, or be treated as mere representations of fact, which must be substantially true. The facts stated in the application, regarding the health of Mrs. Kelsey, must be admitted to be important, and material to the risk, and therefore, if untrue, would avoid the policy as fully as if they were considered as technical warranties. If untrue, as we have no doubt the jury must have found them to be, the plaintiff, and especially his wife, who was his agent to make the application, must have known them to be so, and as they were not disclosed to the company at the time the insurance was effected, the plaintiff is justly chargeable with fraud in procuring an insurance upon such a life. And the application itself provides expressly that any suppression of facts or any untrue or fraudulent answers shall render the policy void. And it would seem that there can be but one opinion on the question of fraud, if Mrs. Kelsey's letter to her mother, but three days previous to her application for the policy, is to be regarded as true. In that letter she expressly states that the doctor says her lungs are healing, and that he thinks if she lives till spring she shall get well. And the whole letter indicates that in her opinion there was doubt as to her living till spring, in consequence of the condition of her lungs. Now if it be admitted that her hopes of final recovery were so strong as to induce her to say in her application three days after that she only had a slight bronchial difficulty in winter, how could the husband, knowing, as he must have done, what the doctor said of her lungs, allow her to sign an application for insurance upon her life, in which it is said she never had had any serious illness? Without therefore alluding to the fact that in this very letter she speaks of another physician than Dr. Hawley, under whose treatment she had been, we can have no doubt that the jury must have found the fraud submitted to them. We are therefore satisfied that the case was cor-

rectly put to the jury on the question of fraud, as well as upon the question of warranty; and that it was correctly disposed of by them.

We do not advise a new trial.

In this opinion the other judges concurred.