JEHIEL H. SIMONDS ET AL. *vs.* THE EAST WINDSOR ELEC-
TRIC RAILWAY COMPANY ET AL.

*Third Judicial District, New Haven, January Term, 1901.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Where the facts relied upon by the defendant constitute but a single
    answer to the action, it is unnecessary and improper to divide them
    into separate defenses.
Averments of an answer which disclose even a partial defense or excuse
    are not demurrable as "irrelevant, immaterial and impertinent."
A franchise to build and operate a railway in the public highways,
    granted by the General Assembly to certain incorporators by name,
    authorizing them to receive and apportion the subscriptions to the
    capital stock of the company at such time and place and under such
    regulations as they may adopt, involves the exercise of discretionary
    powers based upon a special trust and confidence, and therefore
    cannot be bargained away at the will of the incorporators.
A contract stipulating for the transfer of such a franchise is in violation
    of public policy and will not be specifically enforced against either
    party to it.
The voluntary performance by one party of a contract which is merely
    unenforceable, may justify a court of equity in exacting its per-
    formance by the other party, so far as this can be done without
    prejudice to the rights of third persons; but if the contract is also
    illegal, equity will leave the parties where it finds them.
A decree canceling all the subscriptions to the capital stock of a duly
    organized corporation, ought not to be rendered against the com-
    pany merely because one of the subscribers has failed to keep his
    contract with the rest, unless the corporation was a party to such
    contract or assented to it.
Subscribers to the capital stock of a corporation cannot ask for a can-
    cellation of their subscriptions because the majority of the shares
    have been subscribed for in bad faith and with the intention not to
    pay for them, where no bad faith or fraud on the part of the cor-
    poration is claimed.

Argued January 22d—decided February 6th, 1901.

ACTION for the cancellation of all stock subscriptions to
the defendant company, for an injunction, and for other equi-
table relief, brought to the Superior Court in Hartford County

* Transferred from first judicial district.

where a demurrer to certain portions of the answer was sustained, and judgment was afterwards rendered (*Prentice, J.*) for the plaintiffs, upon other averments of the complaint, which were admitted by the answer, from which the defendants appealed for alleged errors in the rulings of the court. *Error.*

The case is sufficiently stated in the opinion.

*James E. Wheeler*, for the appellants (defendants).

*Lewis Sperry*, for the appellees (plaintiffs).

BALDWIN, J. The complainants are the incorporators named in a special charter granted in 1897 to the East Windsor Electric Railway Company. They brought this suit in 1900, and the case which they state is this:—

By a written contract they agreed, in 1898, to transfer forthwith to George W. Dunham, one of the defendants, " the franchise and charter of said company;" to elect any five persons whom he might name as incorporators to act with them; to resign upon the completion of the organization of the company; and to elect such officers and directors as he might designate. In consideration of this, he was to cause the Hartford & Springfield Railway and Construction Company, a corporation to be organized, to enter into an obligation that it would forthwith organize a corporation under the charter granted for the defendant company by procuring subscriptions to all the stock necessary; to make a proper survey, layout and map of a street railway from Warehouse Point to East Windsor Hill, and have it duly lodged for record before the first Monday of October, 1898; to construct such a railway and have it in operation by the first of November, 1899; to enter into a contract with them to have such railway constructed and in operation by that day, said contract to be executed on May 1st, 1899, with a forfeiture of $5,000 in case of default, or otherwise, at his option, " to return the charter and forfeit all money paid thereon on May 1st, 1899;" and, " upon the execution of the transfer" by them, to pay them $400 " towards the expenses of obtaining said charter," said

sum "to cover all their right, title and interest thereto, and the said charter is to be conveyed to the said Dunham free from all debts, liens, or incumbrances of any kind whatsoever." In pursuance of this contract, they permitted him to subscribe for 237 shares of the capital stock of the defendant company, the balance of the capital stock of 250 shares being allotted by the incorporators to themselves, they taking each one share of the same, except one of them who took two. They then called the first meeting of the stockholders, when a pretended organization was effected by the election of a board of directors, who afterwards elected Dunham as president and one Gilman, a non-resident, secretary. All the shareholders except Dunham subscribed for their stock in good faith, expecting to pay the sums severally subscribed, and are able and willing to make such payment. Dunham did not subscribe in good faith, nor intend to pay his subscription, but subscribed in order to prevent the construction of the railway and defeat the purpose of the charter. He has paid the company nothing, and it has no funds. He has utterly failed to construct any part of the railway, and has refused to surrender his stock to the plaintiffs or to retransfer the charter to them. If the plaintiffs can reopen books for subscription, they could procure valid subscriptions for the entire capital, and would proceed forthwith to construct the railway. Dunham refuses to carry out his agreement with them. The charter rights will lapse in 1901, unless the railway shall have been previously constructed.

The plaintiffs made themselves defendants in their capacity as shareholders, and also Dunham and the company, which was described in their writ as a corporation chartered by the State and located in East Windsor.

The plaintiffs, as defendants, admitted the truth of the complaint. The other defendants admitted most of it; but alleged that Dunham's stock subscriptions were made in good faith, and denied all charges of bad faith or fraud, on his part, the statement that the organization of the company was a pretended one, and the averments that he had not fulfilled his part of the contract. As to that, they pleaded in the

course of a "First Defense," that he caused careful surveys of the proposed railway to be made, and had expended $1,400 therefor, and in paying legal fees and expenses. A "Second Defense" repeated this, adding that he had always been ready and willing to construct the road, but had been prevented by difficulty in making arrangements with connecting roads to secure proper traffic facilities.

The railway authorized by the charter of the defendant company (12 Special Acts, 791) was one from "a point in East Windsor Hill at the terminus of the Hartford Street Railway Company, through the Main street, north to a point in East Windsor near the residence of Charles M. Osborne, being the terminus of the Enfield and Longmeadow Electric Railway Company."

There was no occasion for pleading separate defenses. That styled "Second Defense" set up only one new matter, which could as well have been incorporated in the "First Defense." The cause of action was single and the answer should have been single.

The sole cause of demurrer assigned, as respects the new matters in the answer, was that they were "irrelevant, immaterial and impertinent." Neither of these exceptions was well taken. It was relevant and material to the charge against Dunham of an entire failure to fulfil his contract, to show that he had made the promised survey, and had been prevented from constructing the railway by difficulty in arranging with connecting roads to secure proper traffic facilities. The route of the railway was a short one, and one of its main purposes apparently was to serve as a connecting link between the roads of two other street railway companies. Whether a full defense could be thus made out, or whether all of it could not be proved under a denial of the plaintiffs' allegations, was not the question. It was enough to support their sufficiency to withstand the attack made upon them, that they disclosed a partial performance, and what might, under certain circumstances, constitute an excuse for not performing more.

There was also error, and a fundamental one, in founding

the judgment rendered on the admissions in the answer. Under the pleadings the organization of the defendant company must be treated as valid. It is sued as an artificial person. The plaintiffs aver that their subscriptions were made in good faith, and Dunham says the same as to his. A corporation was thus brought into existence with a subscribed capital of $25,000. The judgment strips it of this fund, for no fault of its own, but because one of its shareholders has failed to keep a contract with the rest, to which it was not a party, and to which its assent, so far as appears, has never been asked or given.

This contract also was not one, specific performance of which could be granted by a court of equity.

It stipulated for the transfer of a franchise, granted under a special charter to the plaintiffs by name, to form a corporation which should enjoy the high privilege of building and operating a railroad upon the public highway. These franchises presumably were conferred upon the incorporators because they were deemed by the General Assembly worthy of special trust and confidence. Their functions were important. By § 4 of the charter, they, or a majority of them were to receive subscriptions to the capital stock of the defendant company at such time and place as they might appoint, on such notice as they should deem reasonable, and under such regulations as they might adopt, and, should subscriptions be made for more than $25,000, to make such apportionment of the shares as they saw fit, among the subscribers. Similar powers have sometimes been vested, under charters for moneyed corporations whose operations may affect public interests, in commissioners specially appointed for the purpose. The decisions of such commissioners as to methods of allotting shares are final. *Litchfield Bank* v. *Church*, 29 Conn. 137, 149; *Saugatuck Bridge Co.* v. *Westport*, 39 id. 337, 348. Such discretionary powers, whether confided in a charter to commissioners or to those named as incorporators, are personal, and cannot be bargained away. *Delegata potestas non potest delegari*.

It follows that the plaintiffs could not have been compelled

by Dunham to fulfil their part of the contract in question. A decree of specific performance would have required of them, not only what they had no right to do, but what would have been a violation of a public trust. The consideration for his undertaking was, therefore, an illegal one.

Had it been simply unenforceable, their voluntary performance might have enabled them to call upon the courts to exact its performance by him, so far as this could be done without prejudice to the rights of the corporation or its creditors; but being also illegal, equity will leave the parties where it finds them. It cannot recognize a title in the plaintiffs to relief which is founded on a wrongful use of the franchise with which they were entrusted.

The judgment appealed from, so far as Dunham is concerned, is substantially one for a specific performance. The cancellation of all the shares was evidently adopted as a means of depriving him of the control of the corporation and reinstating the incorporators in their original functions. What the contract described as a retransfer of the franchise or charter would be thus virtually accomplished.

The plaintiffs could not claim a cancellation of their subscriptions on the ground that they were induced by fraud. All fraud on Dunham's part was denied. But even had it been admitted, it could not have availed to release them from their obligations to the corporation, against which no fraud was charged.

There is error.

In this opinion the other judges concurred.