## MARGARET HENNESSY *vs.* THE METROPOLITAN LIFE INSURANCE COMPANY.

Third Judicial District, Bridgeport, April Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

In an action to recover the amount of a policy of life insurance, if the defendant sets up in its answer several breaches of warranty by the insured, they should be pleaded together, as they constitute but one, single defense.

If an answer is improperly split up into several defenses, the court may order them to be consolidated, or may disregard such division in its charge to the jury.

In such an action the defendant cannot properly deny *in toto* a paragraph in the complaint alleging the truth of all the statements and the performance of all the conditions precedent to the issue of the policy; unless, indeed, it is intended in good faith to controvert the truth of all of them.

If, however, such a denial is filed, accompanied with an allegation that one or more particular statements in the application for insurance were false, the court should not strike out the specific averments, but may require the defendant to disclose whether it intends, under its general denial, to controvert the truth of other statements than those particularly specified, and if it does not so intend, may require the modification of such denial accordingly; or the specific denial may fairly be considered as limiting by implication the general terms in which the more sweeping denial is couched.

Where the validity of a policy of life insurance depends upon the truthfulness of the statements made in the application, the assured must allege and prove their truth in an action on the policy. Affirmative evidence, however, is not necessarily required of the correctness of every such statement, whether the same be denied generally or specifically. There is a natural presumption of fact in favor of the truth of solemn acts and declarations of one since dead, in entering into such a contract, under which a policy has been issued and premiums received, and in the absence of countervailing proof the

trier may take this presumption into consideration as tending to support the plaintiff's case.

The policy in suit provided that no forfeiture could be waived except by a written agreement signed by one of the defendant's officers. *Held* that an averment in the reply, to the effect that the defendant continued to collect and receive premiums on the policy after its officers had knowledge of all the facts upon which the alleged forfeitures were based, set up a good estoppel *in pais.*

Where the cause of the decedent's death is in issue, a duly authenticated copy of the death certificate is admissible, not only to corroborate the testimony of the physician who signed it, but also as independent evidence of the facts therein stated.

It is within the discretion of the trial court to admit or exclude a document when offered in evidence upon cross-examination of a witness who identifies it.

The president of the defendant company, having testified that when the policy was issued he had no knowledge of the falsity of certain statements in the application, set up in defense, was asked on cross-examination if he ever made any effort in any case to ascertain whether similar statements were true, and replied in the negative. *Held* that such inquiry was relevant and admissible.

The defendant then offered evidence that during the year in which the policy in suit was dated it issued nearly 1,500,000 policies and paid over 60,000 death claims. *Held* that this evidence, if not absolutely irrelevant, was so remote that its exclusion by the trial court was not ground for a new trial.

Objections to the form of a question put to a deponent should be taken at the time; but those which challenge the testimony because it is in its nature inadmissible, may, under our practice, be entertained, though not made until the deposition is presented at the trial.

A medical witness for the defendant testified that the insured was once a patient of his and then had consumption. *Held* that the plaintiff might show in rebuttal that the witness had said at the time that the insured was suffering from a different disease.

As an officer of the court, an attorney at law speaks in a certain sense under its authority in addressing the jury. If he urges upon them considerations absolutely foreign to the cause, appealing to their prejudices instead of to their reason, it is the duty of the trial judge to interpose; and in exceptional cases, where the remarks are flagrantly improper, a new trial may and should be granted, although no objection was made at the time by counsel for the adverse party.

Argued April 8th—decided June 6th, 1902.

ACTION to recover the amount of a policy of a life insurance, brought to the Court of Common Pleas in New Haven

County and tried to the jury before *Hubbard, J.;* verdict and judgment for the plaintiff for $598, and appeal by the defendant for alleged errors in the rulings and charge of the court, and in its refusal to grant a new trial for a verdict against evidence. *Error and new trial granted.*

The case is sufficiently stated in the opinion.

*Henry Stoddard,* for the appellant (defendant).

*Charles S. Hamilton* and *Robert E. DeForest,* for the appellee (plaintiff).

BALDWIN, J. The complaint, to which the policy of insurance which is the subject of the action is annexed, alleges that the death of James J. Hennessy, the insured, " was not caused by any cause excepted in the policy " and that he " duly fulfilled all the conditions of said insurance on his part." A copy of the application for insurance is made by the policy a part of the contract. This application stated and warranted, among other things, that no one of the parents of the insured ever had consumption, and that this was wholly true, and that any untrue answer would render the policy null and void. The policy is expressly made " subject to the conditions set forth," one of which is that if any statement in the application is not true, the policy shall be void.

The answer, in a " first defense," admitting the issue of the policy and the death of the insured, denied the rest of the complaint, and in a " third defense " set up that the father of the insured, prior to the making of the application, had had consumption, and that the statement in the application to the contrary was untrue. Another breach of warranty was also pleaded separately as a " second defense."

The first defense, as originally filed, contained a paragraph denying " particularly the statement in the complaint that said James J. Hennessy and the plaintiff duly fulfilled all the conditions of said insurance on their part, in this, that in said policy and application therefor the insured and assured stated and warranted " that no one of his parents ever had

consumption; and averring that this statement was untrue. The plaintiff moved that this paragraph be expunged, as being an attempt " under the form of a pretended denial to set up and plead matter of defense, and thereby attempt to compel the plaintiff to prove affirmatively that she did not violate any of the multifarious conditions of the policy on which this suit was brought; and because said mode of pleading is entirely irregular, and an attempt to shift the burden of proof upon the plaintiff in a matter where it rests upon the defendant; and because the matters set up in paragraph three can be legally pleaded only as a matter of an affirmative defense." This motion was granted.

It was bad pleading to split the answer up into three separate defenses. Each of them specified one or more breaches of warranty on the part of the insured. If there were such breaches which had not been waived or which the defendant was not estopped to set up, it followed that the action could not be maintained. The defense, then, was essentially a single one, namely, that by reason of certain breaches of conditions precedent the policy had never attached.

The paragraph of the complaint averring a fulfilment of all these conditions could not properly be denied *in toto*, unless the defendant intended in good faith to controvert the truth of every one of the numerous statements which were made warranties by the terms of the policy. Denials must not only meet but " fairly meet " the substance of the allegations denied. Rules of Court, p. 49, § 162; *Greenthal* v. *Lincoln, Seyms & Co.*, 67 Conn. 372, 377. The paragraph expunged from the first defense indicated an intention to rely particularly on the falsity of one specified statement in the application, and substantially followed *Form* 397 for answers, as given in the Practice Book. There was error in expunging it. The Practice Act was designed to modify the rules of common-law pleading, so as to bring into the record a plain statement, intelligible to any ordinary man, of the real questions which the parties desire to bring to the attention of the court and jury. The paragraph really objectionable

was not the one expunged, but that which denied all the allegations of the complaint which were not specifically admitted. The insertion of the former would have justified the Court of Common Pleas in calling upon the defendant to state whether it intended in good faith to controvert the truth of any other statements than those which the answer particularly specified, and, if such intention were not disclosed, in requiring a modification of the latter paragraph. It might also have fairly been considered as limiting by implication the general terms in which that was couched. *Knickerbocker Life Ins. Co.* v. *Schneider*, 131 U. S. clxxii.

The court should also have ordered a consolidation of the three defenses, or disregarded the attempt to separate them in its charge to the jury. *Simonds* v. *East Windsor Electric Ry. Co.*, 73 Conn. 513. Instead of this, they were instructed that, with reference to the issue raised by the "first defense," it was the duty of the plaintiff to show by a preponderance of evidence that the insured fulfilled all the conditions of the policy on his part, but that with reference to the "third defense" the burden of proof was on the defendant to establish the alleged breach of warranty by a fair preponderance of evidence. Error is assigned upon this portion of the charge relating to the third defense.

That defense rested on a single breach of warranty, which was specifically set forth. It did not otherwise controvert the complaint. The reply, admitting the statement set up, denied that it was false.

On the issue thus raised the plaintiff had the same burden of proof that rested upon her with reference to the first defense. The third defense set up nothing new. It was not in confession and avoidance, but purely in denial. The plaintiff by averring a fulfilment of all the conditions of her policy on the part of the insured had averred that every statement in the application was true. The first defense denied this altogether. In the absence of any motion to make the denial more specific or to strike it out as sham pleading, she was therefore bound to prove her averment. The second and third defenses each denied it as to a particular statement,

the truth of which was an essential condition of the policy. She was therefore bound to prove the truth of each of these statements, for if either were untrue the conditions of the policy had not been fulfilled. 2 Biddle on Insurance, § 1247.

There are authorities of weight in favor of the position that in an action on such a policy, where the falsity of a statement, which was warranted to be true, is pleaded in defense, the burden of proof is on the defendant. The main reason for so holding seems to be that it would be difficult, if not impossible, for the plaintiff to show that each of the many statements that might be so brought in question was true. *Piedmont, etc., Life Ins. Co.* v. *Ewing*, 92 U. S. 377. But no mere argument from inconvenience can be allowed to abrogate, in its application to a particular case, so fundamental a rule of judicial procedure as that which declares that he who seeks the aid of a court must state a case which apparently entitles him to it, and be prepared to prove what he thus states, should it be denied.

The making of the statements in the application for the policy preceded the issue of the policy, and their truth was made the condition of its coming into effect. The plaintiff was bound to allege, as she did, that the insured fulfilled this condition. Gould on Pleading, Chap. IV, § 13; Practice Book, Form 154; 2 Greenleaf on Ev. § 376. So far as this allegation was denied, she was therefore necessarily bound to support it by proof or presumption. While general in form, it was equivalent in legal effect to a successive series of averments, each referring specifically to a particular statement in the application and asserting that it was true. The third defense admitted that all but one of these statements were true. As to that it made no assertion of any new fact, but simply denied what the insured had asserted. As to that, therefore, the burden of proof remained on the plaintiff.

Such a burden is undoubtedly a heavy one to support; but this is of no legal consequence if the contract in suit be such as to require it to be imposed. In a leading case upon a similar policy which came to this court, the jury were instructed by the Superior Court that the statements in the

application were warranties of fact which must be proved true in all particulars, and that one of the questions on which the case must turn was whether the plaintiff had proved their truth to their satisfaction. *Kelsey* v. *Universal Life Ins. Co.*, 35 Conn. 225, 231. In support of a motion for a new trial, counsel for the insured argued that "the character of the statements in the application is such that a preliminary proof of their literal truth is substantially impossible." Ibid. 233. We, however, held, in affirming the charge as given, that their truth was "as much a matter of contract obligation on the part of the insured, and conditions upon which the policy issued, and on the truth of which it was only to bind the company, as if the same had been embodied in the policy itself." Ibid. 237.

But it does not follow that affirmative evidence must necessarily be produced by the plaintiff to meet a denial, whether such denial be general or specific. There is a natural presumption of fact in favor of the truth of solemn acts and declarations of one since dead, in entering into a contract of this peculiar description, under which a policy has been issued and premiums received. *Sweeney* v. *Metropolitan Life Ins. Co.*, 19 R. I. 171; 36 Atl. Rep. 9. It would have been proper for the trial court to instruct the jury that, in the absence of countervailing proof, they might take this presumption into consideration as tending to support the plaintiff's case. It was not evidence in her favor, but it might supply the want of evidence, or call for evidence from the defendant. *Ward* v. *Metropolitan Life Ins. Co.*, 66 Conn. 227, 239; *State* v. *Smith*, 65 id. 283, 285; *Sturdevant's Appeal*, 71 id. 392, 399. Thus, while in every policy of insurance upon a ship there is an implied warranty that she was seaworthy at the inception of the risk, and such seaworthiness is a condition precedent, the insured, in suing for a loss, is not bound to produce evidence of it. *Barnewall* v. *Church*, 1 Caines, 217, 246. Where there is no proof either way, seaworthiness is to be presumed. *Capen* v. *Washington Ins. Co.*, 12 Cush. 517, 535; *Hoxie* v. *Home Ins. Co.*, 32 Conn. 21, 40.

In the reply to the second and third defenses it was alleged that, after the issue of the policy, all the facts therein set up came to the knowledge of the president and secretary of the defendant, but that it nevertheless thereafter continued to collect and receive the premiums on the policy. This reply was properly held sufficient, on demurrer, notwithstanding the policy provided that no forfeiture could be waived except by an agreement in writing signed by either the president, vice-president, or secretary of the company. It set up a good estoppel *in pais*. *Fitzpatrick* v. *Hartford Life & Annuity Co.*, 56 Conn. 116, 131.

In the charge to the jury, they were told that if they should find the matters thus pleaded to be true, they might further find that they constituted a waiver of any breach of warranty or an estoppel against setting up such a breach. As the policy expressly excluded any such oral waiver, this charge was in one respect incorrect; but the error was immaterial, since an estoppel would be of equal force.

The defendant offered in evidence a certified copy from the public records of the registrar of births, deaths and marriages of the city of New Haven, of the " death record " as to John Hennessy, the father of the assured. This record was a copy of a certificate filed and signed by Stephen J. Maher, M. D., the attending physician, in which the cause of death was stated as *tuberculosis pulmonum*. Doctor Maher had previously testified for the defense that he had attended John Hennessy in his last sickness, and that said Hennessy had and died of consumption of the lungs before the issue of the policy in suit.

The copy of the death record was erroneously excluded. The statements which it contained appeared upon a public register kept by an officer appointed by law for that purpose, and in which it was required that statements of that kind should be entered. The main fact to which Doctor Maher had testified was in dispute, the plaintiff claiming that John Hennessy died of a different disease. The defendant had the right to put in the copy as corroborative evidence, and also as independent evidence of the facts recorded. *Enfield* v. *Ellington*, 67 Conn. 459, 462.

The plaintiff, who was the mother of the insured and the widow of John Hennessy, testified in chief in her own behalf and stated on cross-examination that she had signed a certain paper which was shown her for identification. The defendant then offered the paper in evidence, proposing to continue her cross-examination with reference to its contents. These were the proofs of death made by her as claimant under a policy of insurance issued by the defendant on her husband's life.

It lay in the discretion of the trial court whether or not to permit its introduction at that time and for that purpose. It decided not to permit it, and this exercise of its discretion is not the subject of review.

The president of the defendant company testified on its behalf that when the policy was issued he had no knowledge of the breaches of warranty pleaded in defense. The court committed no error in allowing him to be asked on cross-examination if he ever made any effort in any case to ascertain whether statements such as those which were the subject of these warranties were true. His reply that he never did had some tendency to explain his ignorance in respect to the facts in controversy. The defendant then produced the deposition of its actuary, who had testified therein, without objection being then taken, that the defendant, during the year in which the policy in suit was dated, issued nearly 1,500,000 policies of insurance and paid over 60,000 death claims. Objection being now taken to these statements, the Court of Common Pleas excluded them as irrelevant and immaterial. If not absolutely irrelevant, their bearing on the issues in the cause was so remote that their exclusion could constitute no ground for a new trial. The testimony of the president that he knew nothing of the facts in controversy upon the trial, before the policy in suit was issued, had not been shaken by showing that he knew nothing as to facts of a like kind bearing upon any policy, and could derive no material confirmation from proof that the company's policies were so numerous that he would not be likely to have such knowledge.

Had the objection been well grounded, it would not have

come too late. Objections as to the form of a question put in the course of a deposition should be taken at the time: those which go to the substance of the testimony because it is in its nature inadmissible may, under our practice, be entertained, though not made until the deposition is presented at the trial. *Butte Hardware Co.* v. *Wallace,* 59 Conn. 336, 341.

Doctor J. F. Luby having testified for the defense that John Hennessy was once a patient of his and then had consumption, evidence was properly admitted in rebuttal that he had said at the time that Hennessy was suffering from a different disease.

The testimony of John R. Hegeman, the president of the defendant company, had been given by deposition. On cross-examination he was asked whether he had been a witness in an action brought in Connecticut against it a year or two before, and answered in the affirmative. He was then asked whether he recollected that *Judge George W. Wheeler,* before whom that cause was heard, had made a finding in it charging him with perjury or wilful false swearing. This question, under the advice of counsel, he refused to answer.

John Adams was the district superintendent of the defendant at New Haven, and as such had forwarded to the home office the proofs of death under the John Hennessy policy. In these, as presented at the trial, it appeared that the insured died of consumption; but the plaintiff, who had signed them, testified that this word had been written in without her knowledge or authority.

In arguing to the jury in support of the claim that if thus fraudulently inserted, it should not prejudice the plaintiff's rights, and that, if in fact part of the original proofs, Adams (who had testified for the defendant as to material facts in dispute) had perpetrated an outrage by consenting to the issue of the policy now in suit when he knew that there was a breach of warranty which rendered it void, and so placed himself outside the category of credible witnesses, the plaintiff's counsel spoke as follows:

"And I don't care whether it is Hegeman, down in New York, who didn't like, or whose counsel wouldn't allow him,

to answer the question if he had not been found guilty of perjury by *Judge Wheeler* in Connecticut; whether he knew it, or not, Adams knew it. Oh, yes! You can arraign counsel who have courage enough to attack one of these insurance companies, and cannot be scared out after two years and a half fight; you can arraign them, but I tell you it won't put an angel's wings on Hegeman or on Adams, either. The president of a corporation who don't dare answer whether he has committed perjury or not in this State, and the man who says that he knew this man was not a fit subject of insurance, and yet allowed a policy to be issued which he knew his company never intended to pay, and to take her premiums year after year, and put them in their pockets; and my friend says we have the remedy now to sue them for those premiums. Yes, gentlemen, and have another two years and a half fight, and an expense ten times the amount of the premiums. Of course they could well enough pay it. What is the use? Spend all that time and money and expense fighting this rich corporation to get back those few premiums! This poor woman cannot do it: they know we can't. That is wherein this corporation, it seems to me, is one of the worst land-sharks and plunderers that I ever saw. It is among the poor, yes, he says, the uneducated people. Yes, my client is poor, she is uneducated, and she cannot understand how these fellows come around and get her to pay her money in, and then when she wants her pay from the insurance company she can't get it." Several other remarks were made by the same counsel in the course of his argument which were highly objectionable. He also commenced to read to the jury from a paper not in evidence, but on the interposition of the defendant's counsel was stopped by the court and the jury instructed to disregard what of it they had heard.

A motion for a new trial on account of the nature of this argument was made and overruled, because no objection had been taken at the time, except that which the court sustained. This reason, in view of the extremely improper character of the remarks in question, was insufficient. The motion should have been considered on its merits, and, under

the circumstances, it should have been granted by the Court of Common Pleas.

An attorney at law, as an officer of the court, speaks in a certain sense by its authority. He speaks in its presence, and when he addresses a jury it is its duty, although not specially requested, to interpose, if he urges upon them considerations obviously foreign to the cause and appealing to prejudice instead of reason. It is true that the counsel for the adverse party ought ordinarily in such a case, if the court remains silent, to call its attention at once to the objectionable features of the argument; but there are occasions when this might simply give rise to a succession of unseemly wrangles at the bar, and others in which what has been said has, as soon as uttered, done its work beyond all power of remedy. In such exceptional cases, and this was of that description, a verdict in favor of the party whose counsel was in fault should be set aside, notwithstanding a failure of the other party to take exception to the remarks at the time when they were uttered. *State* v. *Laudano*, 74 Conn. 638.

There is error, and a new trial is ordered.

In this opinion the other judges concurred, except PRENTICE, J., who concurred in the result but dissented from so much of the opinion as treats of questions of pleading and the burden of proof.