JOHN SORTITO, ADMINISTRATOR, *vs.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA.

Third Judicial District, New Haven, June Term, 1928.

WHEELER, C.J., MALTBIE, HINMAN, BANKS and YEOMANS, Js.

164

Argued June 7th—decided July 16th, 1928.

*Frederick H. Wiggin* and *Frank E. Callahan*, for the appellant (defendant).

*David M. Reilly*, for the appellee (plaintiff).

HINMAN, J. Each of the policies sued upon contained a "Preliminary Provision" that it shall not take effect if, on the date of the policy, the insured be not in sound health, although in such event the premiums paid, if any, shall be returned. The policies were dated October 4th, 1926. On October 7th the insured, Michael Sortito, had a hemorrhage, was found, upon examination by physicians, to be afflicted with pulmonary tuberculosis, and died therefrom on December 17th, 1926. The principal controversy, upon the trial, related to the issue as to whether the insured was in sound health at the date of the policies. The plaintiff claimed and offered evidence to prove that his decedent was in sound health at and before that date and that the disease which insured manifested soon after was a galloping consumption or acute pulmonary tuberculosis, the onset of which occurred after the policy date. The defendant contended and offered evidence to prove that the deceased had chronic tuberculosis before and at the date of the policies.

The defendant assigns error in the refusal to set aside the verdict as against the evidence. This ruling of the trial court was accompanied by a memorandum of decision which evinces a thorough and conscientious study and analysis of the evidence, and the conclusion reached was that, while the court was of the opinion that the verdict should have been for the defendant, the state of the evidence was such that fair-minded

men might reasonably differ as to the decision to be reached upon the contested issue and that, therefore, under the established rule, the verdict of the jury could not be set aside. *Schlag* v. *Paffney*, 103 Conn. 683, 131 Atl. 420.

Our own careful examination of the evidence leads us to a like result. The defendant depended upon the testimony of three specialists in the treatment of tuberculosis, one of whom examined the insured about five days after the hemorrhage, and the other two upon or after his admission to a sanatorium on October 18th. Their opinions, based upon such examinations and history obtained from the patient, were that, at the date of the policies, he had pulmonary tuberculosis of the chronic ulcerative type. The evidence offered by the plaintiff as to the duration of the disease was that of the physician, not a specialist but an experienced practitioner, who examined the insured the day after the hemorrhage, and who was positive in his diagnosis of the disease as acute tuberculosis, then of only a few days' standing, and of the parents and the employer of the decedent and several others who saw him frequently, who testified that he had, previous to the hemorrhage, no cough, noticeable loss of weight, or other visible indication of having been afflicted with tuberculosis. Testimony that he was contemplating marriage suggested a legitimate motive for his obtaining insurance at the time he did. The short time, but little more than two months, which elapsed between the hemorrhage of October 7th and death may well have lent weight to the claim that the disease was acute, and therefore rapid in its progress. Especially since no medical examination was made in connection with the issuance of the policies, the unexplained failure of the defendant to call as a witness its agent who obtained the applications must have been re-

garded as of some significance as to the apparent health of the insured.

Upon the evidence, we are unable to say that the conclusion imported by the verdict as to insured's state of health at the policy date was one which no jury could reasonably reach. In addition we should give to the ruling of the trial court in denying the motion the weight to which it is entitled, and regard the further rule that its exercise of legal discretion in so doing is not to be disturbed by us unless it clearly appears that this discretion was abused. *State* v. *Chin Lung*, 106 Conn. 701, 704, 139 Atl. 91. There is no error on this ground.

Several reasons of appeal pertain to the charge relating to the burden of proof upon the issue of sound health. The complaint alleged, in paragraph fifth of each count, that Michael Sortito, the insured, "duly fulfilled all the conditions of said insurance on his part." This general allegation covered compliance with the preliminary requirement, that he be in sound health at the date of the policies, which was a condition precedent to the attaching of the risk. The defendant, in the first defense to each count, denied paragraph fifth "more particularly for the reason that the preliminary provision . . . was not fulfilled." A second defense, after making the first defense part of it by reference, again quoted the preliminary provision, alleged that the insured was not in sound health on the date of the policy, and that the defendant had tendered a return of the premiums paid, but that plaintiff refused to accept them. A third defense made the second defense part of it and then alleged that certain answers to questions in the application for insurance were false and fraudulent.

While the allegation in the complaint was general in form, it was equivalent in legal effect to a succes-

sive series of averments each referring specifically to one of the essential conditions and asserting compliance therewith. The defendant could not properly interpose to it, and rest upon, a general denial unless it intended, in good faith, to controvert the presence of all of these conditions. The proper method, which the defendant followed, is to make a specific denial as to the condition which the defendant intends to controvert, and this specification, if accompanying a more sweeping denial, is to be considered as limiting, by implication, the more general terms. *Hennessy* v. *Metropolitan Life Ins. Co.*, 74 Conn. 699, 52 Atl. 490.

Upon such a state of the pleadings the burden is upon the plaintiff to ultimately establish each and all of the conditions essential to a recovery, by the requisite amount of proof. However, as stated in the case cited (p. 705), "it does not follow that affirmative evidence must necessarily be produced by the plaintiff to meet a denial, whether such denial be general or specific. There is a natural presumption of fact in favor of the truth of solemn acts and declarations of one since dead, in entering into a contract of this peculiar description, under which a policy has been issued and premiums received." Analogy was there drawn to marine insurance in which, when there is no proof either way, seaworthiness is to be presumed. *Hoxie* v. *Home Ins. Co.*, 32 Conn. 21, 40.

"In the *Hennessy* case this court took cognizance of a deduction or inference drawn from general experience, and, for purposes of policy and convenience in the trial of causes, founded upon it—or rather recognized as founded upon it—a rule of law designed to serve the useful purpose of such rules, or presumptions as they are more commonly called, in determining the duty of the parties in the production of evidence. In order that this purpose may be accomplished it is

necessary that the plaintiff be permitted, in the order
of his proof, to rest upon the presumption, and reserve
for rebuttal the substantial portion of his proof, if he
shall need to use it. In this way what would other-
wise be an unnecessarily heavy burden upon him, need-
lessly protracting the trial, is alleviated, and a result
in consonance with justice, policy and convenience
achieved." *Vincent* v. *Mutual Reserve Fund Life
Asso.*, 77 Conn. 281, 289, 58 Atl. 963. The last-named
case cites (p. 287), as further examples of the use of
presumptions as the basis upon which a party who
has the ultimate burden of proof may found a prima
facie case, the approved practice in criminal causes
where a defense of insanity is interposed, and in ap-
peals from the probate of wills when the mental sound-
ness of the testator is put in issue. The doctrine of
*res ipsa loquitur* in negligence cases furnishes a fur-
ther similar instance. *Schiesel* v. *Poli Realty Co.*, *ante*,
p. 115, 142 Atl. 812.

"Because of the practical inconvenience of com-
pelling proof of all the conditions precedent in a policy
of insurance, the plaintiff under our rule may, upon
proof of his interest, the issuance of the policy to him,
the loss, and compliance with the proofs of loss, rest
upon the legal presumption that these conditions are
prima facie estalished and the case made out. There-
upon the defendant may offer its proof of the several
breaches which it may have pleaded, and these the
plaintiff may in turn rebut. This burden of proof
never shifts. Upon the whole evidence it is where it
was at the beginning, upon the plaintiff, to prove his
compliance with the terms and conditions precedent of
the policy. The plaintiff sustains the burden as to the
conditions not specifically put in issue by the defense
by proof of his interest, the issuance of the policy to
him, the loss, and his compliance with the proofs of

loss; as to those put in issue by the defense he sustains the burden of proof as in any case." *Benanti* v. *Delaware Ins. Co.*, 86 Conn. 15, 18, 84 Atl. 109.

The applicability of the above rule as to order of proof does not appear to be questioned on this appeal, but the appellant claims that the charge to the jury was such as to impose upon the defendant the burden of proving that the insured was not in sound health, instead of placing upon the plaintiff the duty of establishing by preponderating evidence the health of his decedent at the date of the policies. This contention depends largely upon certain selected statements which, if segregated from the charge and treated as the trial court's only utterance on the subject, would lend color to a claim of prejudice. But, as often occurs, the harmful effect which might be deduced through such a limited consideration, is found to be dissipated when the charge is examined, as a whole, with regard to the instruction thereby conveyed to the jury upon the point under inquiry.

As we have seen, the first defense pleaded to each count was a general denial with notice of reliance upon breach of the preliminary provision quoted therein. The second defense was affirmative—as interposing a basis for proof of a new fact—only to the extent of setting up a tender of return of the premiums paid, as required upon breach of the preliminary provision; the third, alleging fraudulent misrepresentation of material facts, was entirely affirmative. The trial court misstated the technical situation by mentioning the second defense as being affirmative on the issue of sound health. If, in addition, the charge had been such as to impose upon the defendant the burden, incident to an affirmative defense, of establishing by the preponderance of evidence that the insured was not in sound health, it would have been erroneous and

harmful, as such a charge was held to be in the *Hennessy* case, on which the appellant principally relies.

Here, however, the jury were instructed, early in the charge, that "the plaintiff is required to prove by a preponderance of the evidence, all the essential and material allegations of his complaint. That burden rests upon the plaintiff from beginning to end, and if he does not prove these essential and material allegations by a preponderance of the evidence, the verdict should be for the defendant." After the above-mentioned reference to the affirmative defenses, the court stated that "the burden of proving these defenses is upon the defendant who affirms them," and it is this statement of which the appellant principally complains. But there followed, shortly, the following explanation: "When we use this term, 'burden of proof,' we use it with reference to the party who is burdened with the necessity of proving some affirmative fact essential to his case. In this sense the burden of proof does not shift. In the progress of the case the necessity of supplying prevailing evidence shifts from one side to the other as the evidence on one side or the other preponderates. It is obvious this is a matter of sufficiency of proof, not of the burden of proof. . . . When we say the burden of proof is on the defendant to establish the affirmative defense which he is obliged to do, this in no wise changes the rule that the plaintiff must recover by means of a preponderance of the evidence in his favor."

Again, in summarizing the instruction on this point, the court said: "If you . . . find that upon the whole case the evidence offered by the plaintiff has not been, in the opinion of the jury, of sufficient weight to preponderate over the evidence of the defendant, then your verdict should be for the defendant, bearing in mind, as I said in the beginning, that the verdict should

be for the plaintiff, if you find that upon the whole case, he has proven by a fair preponderance of the evidence, the essential and material allegations of his complaint, including . . . the allegation that he did fulfill all the conditions of the insurance, as specified by him," which conditions had already been explained as including that the insured was in sound health on the date when the policies were issued.

Surveying the entire charge upon the subject of burden of proof, we conclude that it was adapted to convey to the jury an accurate conception of the legal situation and the resulting rule, viz., that while the duty of going forward with specific proof as to the decedent's condition of health rested upon the defendant, the plaintiff was and remained under the obligation, if he was to recover, to so rebut and overbalance the defendant's evidence on this point as to establish, by a preponderance of the evidence, that the decedent, by being in sound health, fulfilled this necessary condition precedent.

The exclusion of a question addressed to decedent's mother on cross-examination is the subject of the remaining reason of appeal. On the record, the objection that it was not germane to the direct examination was well taken. The further claim, now urged, that it was admissible to affect the credibility of the witness, comes too late. Had it been seasonably made and overruled, the ruling, by itself, would not have been of sufficient materiality to justify a new trial.

There is no error.

In this opinion WHEELER, C. J., BANKS and YEOMANS, Js., concurred.

MALTBIE, J. (dissenting). I am not able to agree with the decision in so far as it sustains the denial of

the motion to set the verdict aside. The verdict can be upheld only upon the basis of the testimony of the deceased's own physician and lay witnesses. The policy was issued on October 4th. The deceased consulted his physician on October 7th or at latest October 8th, and told him he had had a slight hemorrhage the night before, that is, two or at most three days after the policy was issued. The physician, when asked as to the onset of the disease with reference to the date of the hemorrhage, said it probably had existed "a few days" before; and later he testified: "Probably he became infected with this [disease] a few days before the manifestation of the symptoms." It does not seem to me that this testimony affords a reasonable basis for a conclusion by the jury that the disease had not existed three days before the hemorrhage. The evidence of the lay witnesses adds nothing, because it merely goes to the fact that, as far as they knew, he had manifested no symptoms of the disease before the hemorrhage. That, in view of the physician's testimony I have quoted, could not be taken to mean that he did not have it "a few days" before that occurrence, when it did manifest itself.