[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, William Buess, Jr., commenced this action against WT Systems, Inc. (hereinafter "WT"), Joachim Wolf and Wolftechnik Filtersystme GmBH (hereinafter "Wolftechnik") with a nine-count complaint. The defendants filed a counterclaim in five counts.
Based on a fair preponderance of the evidence introduced at trial, the court finds the following facts proven: the plaintiff, William Buess, Jr., and the defendant, Joachim Wolf, decided to start a Connecticut company to sell filtration systems in the United States based on patents owned by Wolf. Wolf, for his part, would provide products from his German company, Wolftechnik, and technical know-how, while Buess would use his professional expertise and his long-term industry contacts. Both parties agreed to invest in this endeavor; Wolf would contribute $200,000.00 or two-thirds and Buess, $100,000.00, representing one-third of the investment. No evidence was introduced to indicate that WT promised to repay this investment or that Buess requested that the company do so. There was no valid agreement or promissory note involving Buess and Wolf that would obligate Wolf to repay Buess' investment. While plaintiff offered as Exhibit H a purported agreement between himself and Wolf, which agreement was typed by the plaintiff over Wolf's signature on a sheet of Wolf's letterhead, the Court does not find this to constitute an agreement to repay and no obligation on the part of WT or Wolftechnik was established.
The business relationship of Buess and Wolf began some time during 1987 and gathered momentum in December of that year at a trade show (Chem Show) in New York. After both Buess and Wolf became impressed with the interest shown by potential customers at that show, Wolf gave Buess approximately $20,000.00 in cash for expenses needed to contact Chem Show customers and to find space for the new company. Buess agreed to contact, during January, February and March 1988, the approximately 85 potential customers who had shown interest in Wolf's patented filtration system and to find a location for the company.
As early as January 1988, Buess represented to Wolf that he was not able to follow up the customer contacts, and to increase sales efforts while managing the establishment of the new organization. He convinced Wolf that another person should be hired as general manager solely to set up and run the company. CT Page 10242 Consequently, in February 1988, David Davis was hired for that position.
In April of 1988, the corporation, WT, was set up at 34 Industrial Park Place, Middletown, Connecticut. On or about April 7, 1988, Wolf and Buess signed a "business agreement" concerning the formation of their business to be known as WT Systems, Inc. The agreement was witnessed by Davis. The agreement provides for a $2,000.00 deposit by Wolf and $1,000.00 by Buess, in addition to loans by Wolf and Buess in the same proportions. The agreement, however, does not impose an obligation to repay on either WT or Wolf.
On or about April 10, 1988, the plaintiff typed what he refers to as an "agreement" onto a piece of Wolftechnik letterhead that Wolf had signed some time previous to his return to Germany on April 7, 1988. (Plaintiff's Exhibit H). There was no testimony, however, to suggest that Wolf's intent in leaving signed letterheads with Buess was to allow Buess to formulate a pay-back agreement. The testimony concerning the point at which Wolf was notified of this so-called "agreement" is contradictory and unclear. It is noted that the purported "agreement" on the part of Wolf, cast in the form of a letter to Buess, recites an agreement by Wolf to "buy back" Buess' investment in WT to a maximum of $100,000. Buess claimed that Wolf agreed to the terms contained in the (April 10, 1988) "agreement" and instructed him to memorialize it over his (Wolf's) signature, indicating that there was a discussion of terms prior to the typing of the document onto the letterhead. This is flatly contradicted by Wolf's testimony. As the plaintiff was unable to offer any persuasive evidence to support his claim that the April 10, 1988 document was actually agreed to by Wolf, the Court finds that plaintiff has not sustained his burden of proof as to the validity of that document as an agreement.
WT had three full-time employees around the time of inception: Buess, the "president", in charge of sales; Davis, the "general manager"; and W. Buess III, Buess' son, the "production manager" respectively. By April, Wolf had invested approximately $150,000.00 of his $200,000.00 commitment. Buess had invested nothing additional at this point. The company was paying in excess of $10,000.00 per month in salaries. There were no customers, no sales and no income. However, in May, 1988, Buess hired another employee, Kathy Osnoe, as a full-time secretary.
By July, 1988, Wolf was fully invested with $200,000.00 in cash, machinery and products. Buess had invested $37,000.00 of his $100,000.00. By this time, Buess had obtained one order for $600.00. CT Page 10243
On or about August 3, 1988, Wolf and Buess rewrote their "business agreement" due to Buess' failure to invest his total commitment of $100,000.00. In this agreement, the parties clearly speak in terms of "investment" rather than "loan." There is no obligation on the part of any party to repurchase the shares of the other, although the "business agreement" provides that either party can sell their shares to the other under some circumstances.
On or about August 23, 1988, WT signed an exclusive distributorship agreement with CUNO, Inc. (hereinafter "CUNO"). Under this contract, WT was to contact CUNO's distributors and teach them the application of the filter system. The contract, however, is two pages long, carelessly drafted, unfavorable to WT and was procured, drafted and signed without the advice of any counsel retained by Buess and Davis. No testimony was presented as to why Buess and Davis failed to retain an attorney to protect the company's interests in the drafting of an important, exclusive distributorship agreement.
At some point in August of 1988, Wolf's daughter, Bettina Wolf, began working at WT, keeping in close contact with her father via telephone and fax. Bettina Wolf had no official role in the corporation until October 21, 1988, when she was designated Secretary/Treasurer and Director.
By October 1988, Wolf had invested $250,000.00 and WT had paid over $90,000.00 in salaries. Buess had contributed $87,000.00 of his 100,000.00 commitment.
On or about October 17, 1988, Davis offered to resign his position, based on a verbal employment agreement. Also, on or about October 17, 1988, Buess resigned his positions in the company. At the same time, Buess demanded the return of the paid in $87,000.00 based on the April 10, 1988 document. On or about October 21, 1988, Wolf terminated Davis for fraud.
I. The Complaint
It is:
 an "`elementary rule that whenever the existence of any fact is necessary in order that a party may make out his case . . . the burden is on such party to show the existence of that fact.'" Nikitiuk v. Pishtey, 153 Conn. 545, 552, 219 A.2d 225 (1966)." Eichman v. JJ Building Co., 216 Conn. 443, 451, 582 A.2d 182 (1990).
B.A. Ballou Co. v. Citytrust, 218 Conn. 749, 752 (1991); and it is that party's burden to "prove its own case by a preponderance of the evidence. Sortito v. Prudential Ins. Co., 108 Conn. 163, CT Page 10244 171, 142 A. 808." Vigorito v. Allard, 143 Conn. 70, 71 (1955).
Once liability is established,
 In an action at law based upon contract, the party seeking recovery has the burden of proving by the fair preponderance of evidence the amount of his damages. See Jones Destruction, Inc. v. Upjohn, 161 Conn. 191, 199, 286 A.2d 308 [1971]; Dorne v. Williams, 140 Conn. 193, 201, 98 A.2d 796 [1953]. Bronson Townsend Co. v. Battistoni, 167 Conn. 321, 326 (1974). This is axiomatic in Connecticut law.
The Court concludes that the plaintiff has failed to sustain this burden as to any of the counts of the Complaint.
 A. First Count (as to WT only) Breach of agreement to repay an investment of $87,000.00.
The plaintiff has offered no evidence indicating an agreement with the corporation to repay his investment. The April 10, 1988 agreement upon which plaintiff relies is entitled "Business Agreement between Joachim Wolf and William Buess, Jr., in regards to WT Systems, Inc." (emphasis supplied). Whatever else the plaintiff claims the April 10, 1988 document accomplishes, it certainly does not constitute a promise from or an agreement with WT. The plaintiff has offered only what he claims are agreements between himself and Wolf and not agreements or promises by the corporation. As no agreement and no breach have been found, the Court finds in favor of the defendant as to the First Count of the Complaint.
 B. Second Count (as to Joachim Wolf only) Breach of Promise to Repay Investment of $87,000.00.
The plaintiff has not met his burden of proof in establishing the existence of a promise to repay his establishing the existence of a promise to repay his investment of $87,000.00 by Wolf. The Court is not persuaded that there was a mutual understanding constituting an agreement or promise to repay the on the basis of the evidence, including the testimony of Attorney Thomas E. Cronan who drew up three promissory notes which were never signed and who was present during discussions regarding the capitalization of the company.
The agreement of April 7, 1988 does not establish a promise to "pay back" on the part of Wolf. As the Court interprets this agreement, in light of all the circumstances of the parties' dealings, including their August 3, 1988 agreement, the agreement CT Page 10245 was intended by the parties to establish an investment relationship, not a loan situation, with regard to WT. The plaintiff did not present sufficient evidence to establish that the April 10, 1988 document was a valid contract. The Court is unpersuaded by his testimony. A meeting of the minds is not demonstrated by the evidence of the April 10, 1988 agreement typed over an existing signature. Nor did Wolf conduct himself in such a manner as to indicate that he agreed to the terms.
Plaintiff cites and relies on Ruscito v. F. Dyne Electronics Co., 177 Conn. 149 (1979) for the proposition that an agreement to execute memoranda or statements of indebtedness is the equivalent of a validly executed instrument of debt. The Court finds the Ruscito case inapplicable, however, as the facts in Ruscito are distinguishable from those in the instant case. In Ruscito, promissory demand notes were issued with amounts certain, providing for 7 percent interest per annum. Here, the plaintiff arranged to have promissory notes prepared in different denominations, but the notes were never executed. The April 7, 1988 and the April 10, 1988 documents do not establish a promise to repay or a statement of indebtedness.
As no promise and no breach have been found, the Court finds in favor of the defendants as to the Second Count of the Complaint.
 C. Third Count (as to WT and Joachim Wolf) Breach of Fiduciary Duty.
In his Third Count, plaintiff alleges a violation of a fiduciary duty owed by defendants to the plaintiff under statutory[1] and decisional law. The definition of fiduciary duty is by nature a flexible one:
 This court has. . .specifically refused to define "a fiduciary relationship in precise detail and in such a manner as to exclude new situations," choosing instead to leave "the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." Harper v. Adametz, 142 Conn. 218, 225, 113 A.2d 136 (1955); see Cohen v. Cohen, 182 Conn. 193, 203, 438 A.2d 55 (1980); Hieble v. Hieble, 164 Conn. 56, 61, 316 A.2d 777 (1972); Worobey v. Sibieth, 136 Conn. 352, 359, 71 A.2d 90 (1949).
Alaimo v. Royer, 188 Conn. 36, 41 (1982). Although, in this case, it was Wolf who trusted the superior knowledge, expertise and ability to sell of the plaintiff, the Court does find that the defendant Wolf owed a fiduciary duty to the plaintiff under CONN. GEN. STAT. 33-313 (d). CT Page 10246
Plaintiff claims that the nonexistence of stock certificates, the backdating of the company's bylaws which, were unsigned as of
October, 1988, to February, 1988, the presence of Bettina Wolf at WT, Wolf's making of management decisions, his holding of a special meeting of the corporation on October 21, 1988 without notice to the plaintiff, and the alleged firing of the plaintiff constitute a breach of Wolf's fiduciary duty to the plaintiff as fellow director and stockholder in WT.
While the Court does find that the plaintiff did not receive notice of the October 21, 1988 special meeting, he was not entitled to such notice. The plaintiff had resigned as an officer of the corporation on October 17, 1988 at the same time he made his demand for repayment. Because he was not entitled to notice, no breach of duty was committed.
As to the nonexistence of stock certificates and the backdating of the by-laws, these circumstances reflect at least as poorly on the plaintiff as on the defendants. The plaintiff was hired, by his own admission, to set up a United States company and market a new filter system. The organization of the corporation was left in his hands and, indeed, he was made the president and a director of WT with the authority and duty to carry our the commands of the by-laws. It was the plaintiff's role to take care of such organizational functions as preparing the corporate book, stock certificates and by-laws; That role not having been performed, there is no breach of fiduciary duty on the part of the defendants. The backdating of the bylaws has not been shown to be more than a typographical error or the innocent mistake of someone ill-versed in Connecticut law.
Bettina Wolf's presence at WT and her correspondence with her father have not been shown to be more than an annoyance to the plaintiff. He may not have liked Bettina Wolf's presence, but she was not put on salary at WT or made a director or officer of the corporation until after he offered to resign and did resign his position in the corporation. It can hardly be said, on the basis of her presence and her telephone calls, that she was sent to run the company, or be a de facto company manager; no more than that has been alleged. The presence of Wolf's daughter at WT was not a breach of fiduciary duty.
Plaintiff's assertions that Wolf began dictating management decisions before the October 17, 199 resignation are not supported by any evidence as to what form any of Wolf's demands may have taken. The plaintiff has not alleged that Wolf threatened the plaintiff if he did not comply with Wolf's alleged dictates, nor has he alleged that Wolf's instructions to plaintiff were oppressive or burdensome. CT Page 10247
As the Court has not found that plaintiff was fired, but rather resigned, plaintiff's claim of breach by unlawful termination must fail as well. Even had the plaintiff been terminated, plaintiff's position at the company was without specific duration. Employment without any specific duration is employment at will and may be terminated at any time with or without cause. Magnan v. Anaconda Industries, Inc., 193 Conn. 558
(1984). As plaintiff presented no evidence and did not brief any issues of WT's alleged breach, and as the plaintiff has failed to establish a breach by Wolf, the Court finds in favor of both WT and Wolf as to the Third Count of the Complaint.
 D. Fourth Count (As to WT and Joachim Wolf) CUTPA Claim
The Fourth Count realleges the claims of the Third Count, further asserting that certain practices of the defendant satisfied the three-part test used to determine violations of the Connecticut Unfair Trade Practices Act, CONN. GEN. STAT. 42-110a, et seq. The practices in question are as follows:
 Wolf's inducement to invest in WT, followed by the successful CUNO Distribution Agreement, coupled with Wolf's improperly noticed Special Meeting and firing. . .
Plaintiff's Memorandum at 23.
In determining when a practice is unfair within the meaning of CUTPA, the Connecticut Supreme Court has:
 "`adopted the criteria set out in the "Cigarette Rule" by the federal trade commission . . ." (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]." [cites omitted]. A-G Foods. Inc. v. Pepperidge Farm. Inc., 216 Conn. 200, 215
(1990). While defendants are persons acting in the conduct of a trade or commerce within the meaning of CONN. GEN. STAT. 42-110a
and the plaintiff took out bank loans to satisfy his investment commitment and paid interest and legal fees which he claims constitute an ascertainable loss, the plaintiff has not met the first two prongs of the CUTPA test.
CT Page 10248
The Court has not found any misrepresentation or wrong-doing in the conduct of the defendant Wolf when he and the plaintiff agreed to start WT, nor has it found that the plaintiff was fired. The plaintiff was not entitled to notice of the special meeting, having resigned as an officer of WT before it was held. The CUNO distribution agreement obtained for WT by the plaintiff does not change any of the above facts. The plaintiff has not proven that the actions of the defendants were immoral, unethical, oppressive, or unscrupulous, nor did he place them within any established concept of unfairness.
The plaintiff has tried to draw a parallel between the instant case and Dow Condon Inc. v. Anderson, 203 Conn. 475 (1987), a case involving real estate commissions in which probable cause that a CUTPA violation occurred was established. Dow Condon does not stand for the proposition that there is a prima facie CUTPA violation where one party to a business venture realizes a gain and another realizes as loss, however, nor does it alter the CUTPA standard.
Accordingly, the Court finds in favor of the defendant as to the Fourth Count.
 E. Fifth Count, (as to WT and Joachim Wolf) Breach of Promise of Employment
As the Court has found that the plaintiff's employment was employment at will without any specific duration, and that the plaintiff resigned from his position, it does not find a breach of promise of employment on the part of WT or Wolf. The cases cited by the plaintiff do not cover the resignation of an employee, nor do they overrule the long line of Connecticut cases which holds that permanent employment or employment without specific duration is employment at will and may be terminated at any time with or without cause. See D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, n. 1 (1987).
The Connecticut Supreme Court has stated, in a case cited by the plaintiffs, that:
 We have implicitly assumed that the resolution of the issue of terminability of the employment without just cause depended wholly upon the intention of the parties as reasonably comprehended by them when the agreement was made. In [Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 564-565 (1984)] we acknowledged that an agreement not to discharge an employee without just cause "may arise when an employee, in reliance on an implied representation that the position will not arbitrarily be terminated, leaves his current CT Page 10249 employment, or otherwise acts in reasonable and significant reliance on the representation."
Coelho v. Posi-Seal International, Inc., 208 Conn. 106, 118 (1988). Plaintiff has not shown that an agreement not to discharge him arose at any time during his association with WT. He has presented no evidence supporting an implied representation that the position he held would not be arbitrarily terminated nor has he presented any evidence that he relied on such a representation. The Court finds in favor of the defendants as to the Fifth Count.
 F. Sixth Count (as to WT and Joachim Wolf) Fraud
A long line of Connecticut case law sets out the requirements See above-cited text. for a successful claim of fraud:
 "The essential elements of an action in fraud, as we have repeatedly held, are: (1) that a false representation was made as to a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party do act on it; and (4) that the latter did so act on it to his injury. Paiva v. Vanech Heights Construction Co., 159 Conn. 512, 515, 271 A.2d 69
(1970); Clark v. Haggard, 122 Conn. 641, 642, 191 A. 5254 (1937); Bradley v. Oviatt, 86 Conn. 63, 67, 84 A. 321 (1912); Barnes v. Starr, 64 Conn. 136, 150 28 A. 980
(1894)." Miller v. Appleby, 183 Conn. 51, 54055, 483 A.2d 811 (1981).
Maturo v. Gerard, 196 Conn. 584, 587 (1985).
As no promises of continued employment or promises not to discharge arbitrarily have been found, plaintiff has not satisfied any of the elements of fraud. The plaintiff failed to prove the Seventh Count.
Plaintiff has only briefed Counts One through Seven, and did not present any evidence to support either the Eighth Count, which sounds in fraudulent transfer, or the Ninth Count, which sounds in conspiracy. The Court therefore finds in favor of the defendants on the Eighth and Ninth Counts.
As to the plaintiff's Motion for a Directed Verdict, which was made after defendants rested on the Complaint, such motion is inappropriate under the Connecticut Practice Book. It is reasonable, under the circumstances, to construe defendants' evidence offered on the Counterclaim as applying to defense of the CT Page 10250 Complaint as well. In any event, on the basis of plaintiff's evidence on the Complaint alone, the plaintiff failed to establish any of the causes of action in his Complaint. The Motion is denied.
II. The Counterclaim
A. First Count: Breach of Fiduciary Duty.
A fiduciary duty exists in "situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other [cites omitted]." Alaimo v. Royer,188 Conn. 36, 41 (1982). The Court finds that plaintiff had a fiduciary duty to the defendant, who trusted the superior knowledge, expertise and ability to sell of the plaintiff, and was a fellow director of WT.
The Court has not, however, found conduct on the part of Buess which sabotaged WT nor has it found any misappropriation of funds. While defendants may have disapproved of the plaintiff's expenditures, may have found the plaintiff less industrious than desired, and may have found, after the fact, the employment of Davis, Buess' son, and a secretary to be unnecessary, these actions do not rise to the level of a breach of the plaintiff's duties as an officer or director or his fiduciary duty to the defendants.
The $2,000.00 increment in salary above what the defendants had expected has not been shown to be more than an innocent misunderstanding between the plaintiff, who had thought he would be paid $1,000.00 per week, and the defendants, who thought the plaintiff would be paid $50,000.00 per year. The Court finds in favor of the plaintiff as to the First Count of the Counterclaim, as there is no evidence of a breach of fiduciary duty.
B. Second Count: Violation of CUTPA
In order to find in favor of the defendants as to the Second Count, this Court must find that the acts and omissions complained of fall within an established concept of unfairness and were immoral, unethical, oppressive or unscrupulous. (See discussion of CUTPA standards in Part I, section D, above.) As the Court has found no sabotage on the part of the plaintiff, no unreasonable or stealthy dissipation of funds or breach of plaintiff's duties as a director, defendant's CUTPA claim must fail, and the Court finds in favor of the plaintiff as to the Second Count of the Counterclaim.
 C. Third Count: Negligent Misrepresentation Negligent misrepresentation is a
CT Page 10251
 "fail[ure] to exercise reasonable care or competence in obtaining or communicating the information." Restatement (Second), Torts (1979) 552.
D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,202 Conn. 206, 210 (1987). An actionable misrepresentation may be made "knowingly, recklessly, negligently or innocently [cites omitted]." J. Frederick Scholes Agency v. Mitchell, 191 Conn. 353, 359 (1983).
Defendants have not proven that the plaintiff failed to exercise reasonable care or competence in his communications with them. Just like the defendant Wolf's statements to the effect that WT would make all the parties millionaires within five years, plaintiff's optimism over the economic benefits of employing Davis does not constitute an actionable misrepresentation. The statements of both Buess and Wolf represented their fondest hopes for WT, not an ironclad guaranty. The Court finds in favor of the plaintiff as to the Third Count of the counterclaim.
D. Fourth Count: Fraud
In order to find in favor of the defendants at to their Fourth Count, the Court would have to find that Buess made a false representation he knew to be untrue in order to make the defendants act on it and that the defendants did act on it to their detriment. As the Court has not found any false or actionable representations, it finds for the plaintiff as to the Fourth Count of the counterclaim. (See discussion of fraud standards in Part I, section F, above.)
E. Fifth Count: Perjury
The defendants have failed to produce any legal or evidential support for this count which, apparently, claims damages based on an alleged violation of CONN. GEN. STAT. 53a-156, the criminal perjury statute. Accordingly, the Court finds in favor of the plaintiff as to the Fifth Count of the counterclaim.
Judgment may enter in favor of the defendants as to all counts of the Complaint.
Judgment may enter in favor of the plaintiff as to all counts of the Counterclaim.
SCHALLER, J.